## THE STATE v. BALDWIN.

1. **Certiorari:** ORDER FOR INJUNCTION. In injunction proceedings the order of a court having jurisdiction of the matter and of the parties, even if erroneous, is not void, and until reversed must be obeyed.

2. ——: CONTEMPT. An attachment for contempt is the proper mode of enforcing obedience to a continuing order in the form of a mandatory injunction.

3. ——: RETURN. The return of the writ of *certiorari* in this case was sufficient to authorize the examination of the case upon its merits.

*Certiorari to Van Buren Circuit Court.*

THURSDAY, DECEMBER 8.

THIS is a proceeding in this court for a review upon *certiorari* of the action of the Van Buren Circuit Court in imposing a fine for comtempt upon E. F. Baldwin, John Trout, James T. Jones, and Addison Kerr, trustees of a religious corporation called the "Union Meeting House of the Methodist Church." On the 17th day of June, 1880, a writ of *certiorari* issued from this court to the Hon. Robert Sloan, Judge of the Circuit Court of the Second Judicial District, commanding him to certify to this court a transcript of all the records and evidence in proceedings for contempt.

To this writ the said judge made return, and by agreement the case was continued to this term. The material facts are stated in the opinion.

*Knapp & Beaman*, for the relators.

*Work and Brown*, for the respondent.

DAY, J.—On the 13th of June, 1878, there was duly filed for record articles of incorporation of the "Union Meeting House of the Methodist Church." These articles provide that the corporation shall consist of five trustees who shall be elected yearly by the quarterly conference of the church. The articles of incorporation contain the following provisions: "It shall be the duty of the board of trustees to admit all evangelical ministers of other churches, at any time the Methodists are not using the house themselves."

On the 24th day of February, 1878, the trustees of the "Union Meeting House of the Methodist Church" presented to the Van Buren Circuit Court a petition alleging that W. A. Carter, Josiah Saddler, E. J. Waggoner, Ira J. Hawkins, and others, claiming to be connected with an organization known as the Seventh Day Adventists, had been breaking into said meeting house and injuring the same, and praying a preliminary injunction restraining said Carter and others from further depredations, and from using said house without authority from said trustees. A preliminary injunction was issued as prayed. In December, 1879, a final decree was rendered in said injunction proceeding, the material portion of which is as follows: "It appearing that the present trustees of the Union Meeting House of Lick Creek township, Van Buren county, Iowa, are the following, to-wit, Thomas Baldwin, James Jones, John Trout, Addison Kerr, and Andrew Yost, they are made parties plaintiffs hereto, as the present trustees, and by agreement of parties upon a full submission of this cause, the following order is made perpetual; that is, the defendants are enjoined from breaking into or injuring the church aforesaid. But the court holds that it is the duty of the said trustees to admit the defendants, or either of them, to the use of said

church for religious services when the Protestant Methodists are not using said church for said services, and when there is no other applicant for such purpose.   The said trustees are hereby required and commanded to so admit defendants upon proper application."

After this order was made, January 2, 1880, Josiah Saddler applied on behalf of the organization known as Seventh Day Adventists to Thomas Baldwin, who was president of said board of trustees, for the use of the Union Meeting House for the purpose of holding religious services on the 3d day of January.   Baldwin said he would not permit them to use the house.   Saddler then asked him, as president of the board of trustees, if he would call a meeting of the board of trustees to take the matter into consideration.   He said he would not take any action in the matter as president of the board of trustees.   On the 8th day of January, 1880, the order of the court in the injunction proceeding was duly served upon said trustees.   Upon being served with this order Baldwin caused public notice to be given of a church meeting to be held on the 14th day of February, 1880, for the purpose of taking under consideration and determining what should be done with reference to admitting the "Adventists" to the use of the church.

This notice was given pursuant to the following provisions of the discipline of the Methodist Church:   "The trustees shall have power, when authorized by two-thirds of the qualified members of a society at a meeting, for the purpose of which meeting at least four weeks' notice shall have been given, to purchase, build, repair, lease, sell, rent, mortgage, or otherwise procure the disposition of property, and on no other condition or conditions whatsoever.

"Each church or society shall have power, by the concurrent vote of two-thirds of the qualified members, publicly called together for that purpose, to purchase, build, lease, sell,

rent, or otherwise obtain the disposition of property for the benefit of the Protestant Methodist Church."

At the church meeting Saddler and Carter were present, but upon request they withdrew. The meeting then adopted the following resolutions:

" WHEREAS, certain parties holding to the so-called Adventists Church desire the use of a church building known as the Union Church of the Independent Circuit of the Methodist Protestant Church of the Iowa Conference, we, the members of said Methodist Church, do by our vote refuse said so-called Adventists the use of said church, for the following reasons:

" 1. They have caused strife, contention, and hard feelings in the neighborhood.

" 2. They did break open and abuse said house, and failed to make good the damages done.

" 3. We do not acknowledge as orthodox a people who deny the immortality of the human soul, and who violate and ignore the Christian Sabbath; who, in theory, deny the resurrection of the dead."

All the trustees voted for these resolutions, and they were adopted unanimously. As soon as the meeting adjourned, and before the persons present had departed, Saddler and Carter again came into the house. The evidence is somewhat conflicting as to what then occurred. We are, however, satisfied from the whole evidence that Saddler and Carter made a request of Baldwin for the use of the house on Saturday the 28th day of February, that Baldwin refused said request, and that the other trustees approved of and assented to the refusal.

At the April term, 1880, of the Van Buren Circuit Court an information for contempt was filed against said trustees, and an order was issued and served upon them that they show cause why they should not be dealt with and punished for a contempt in refusing to obey the order made in the injunction proceeding.

The trustees appeared in person and by counsel; testimony was taken; Baldwin was fined ten dollars, and in default of payment of such fine was ordered to be imprisoned three days, and each of the other trustees was fined one dollar. The costs, amounting to $98.10, were adjudged against the trustees equally.

I. The relators claim that under the sections of the discipline of the Methodist Church set out in the foregoing state-

1. CERTIORA-RI: order for injunction.

ment they had no authority to authorize the use of the church building, except as directed by a two-thirds vote of the qualified members of the church at a meeting called for the purpose, and that in obeying such direction they could not be guilty of contempt of court, even if they refused obedience to the order of the court.

We need not determine whether these articles of the discipline apply to the case of admitting evangelical ministers of other churches to the use of the house. If they do, they are clearly inconsistent with the articles of incorporation, which make it a *duty* of the trustees to admit all evangelical ministers of other churches at any time the Methodists are not using the house themselves.

If these articles of discipline in any way qualify the right of the trustees to control the use of the house they should have been presented to the court in the injunction proceeding, and insisted upon as a reason why the order entered in that proceeding should not have been made.

If they were called to the attention of the court in that proceeding, and notwithstanding the court erroneously ordered the trustees to do what is beyond their power, the order may, upon proper proceedings be reversed. But the order of the court, even if erroneous, was not void. The court had jurisdiction of the parties and of the subject-matter, and its adjudication cannot be disregarded with impunity. So long as it remains unreversed it must be obeyed. There would be an end of all subordination and social order, if parties could dis-

regard judicial orders, and when proceeded against for contempt, call in question the correctness of the order itself. In such a proceeding the only legimate inquiry is, did the court have jurisdiction, and did it make an order which has been violated?

II. It is further claimed that an attachment for contempt is not a proper mode of enforcing obedience to the order in question. The order is a continuing one in the nature of a mandatory injunction. It requires and commands the trustees to admit the parties in question to the use of the church for religious services, when the Protestant Methodists are not using it for such services, and when there is no other applicant for such purpose. It is impracticable to enforce this order by execution or other writ. The only way the parties to it can be coerced into obedience is by proceeding against them for contempt. Section 3026 of the Code clearly authorizes this proceeding.

*2.——: contempt.*

III. It is claimed by the relators that the return to the writ of *certiorari* is not sufficient to authorize an examination of the merits of the case, because the return fails with sufficient certainty to certify the evidence and record in the case. We are asked to strike out certain portions of the return, and then to reverse the case because the remainder would not contain enough to justify the action of the court. Relator's counsel impliedly admit that the objections which they make are extremely technical. We have examined them carefully and we feel constrained to hold that they are without merit. We discover no illegality or error in the action of the court below in punishing the relators for contempt.

*3. ——: return.*

The court's action is approved and

CONFIRMED.