**SOUND STORM ENTERPRISES, INC.,
et al., Plaintiffs,**

v.

**Joseph C. KEEFE, Judge of the District Court
of Iowa IN AND FOR FAYETTE
COUNTY, Respondent.**

No. 54838.

Supreme Court of Iowa.

July 3, 1973.

Jesse, LeTourneau & Johnston by Dan L. Johnston, and Norman G. Jesse, Des Moines, for plaintiffs.

Richard C. Turner, Atty. Gen., Douglas R. Carlson, and Walter L. Saur, Asst. Attys. Gen., for respondent.

RAWLINGS, Justice.

This is an original certiorari proceeding to review decree entered by respondent judge holding plaintiffs guilty of contempt and imposing concomitant penalties for violation of temporary injunctions.

Tuesday, July 28, 1970, State of Iowa, ex rel. Robert D. Ray, Governor, Richard C. Turner, Attorney General (Attorney General), Walter Saur, Fayette County Attorney, Jack Fulton, Commissioner of Public Safety and Arnold Reeve, Commissioner of Public Health, commenced an action in equity against Sound Storm Enterprises, Inc. (Sound Storm), Wadena Development

Company (Wadena Company), James A. Crill (Crill) and Murray Moorhatch (Moorhatch). The above identified public officials thereby alleged defendants (hereafter sometimes referred to as original defendants) were promoting and intending to conduct a "rock music festival" near Wadena commencing Friday, July 31, 1970, and continuing through the weekend to August 2nd. It was further asserted original defendants had failed to comply with Sections 444.18 and 332.23, The Code 1966, and Iowa State Department of Public Health regulations in that facilities to be provided regarding the proposed festival were insufficient to handle law enforcement, public health and safety problems attendant upon an anticipated attending crowd of 24,000 people. The aforesaid petition was supported by Richard Turner's affidavit.

July 28, 1970, C. Edwin Moore, Chief Justice of this court, temporarily restrained original defendants:

"* * * from promoting or conducting a rock music festival or other show in Fayette County, Iowa, from selling tickets therefor, and from further doing or performing any other acts or things calculated or intended to, or having the effect of, attracting large numbers of people to said vicinity, until further order of the District Court of Iowa, in and for Fayette County * * *."

Pursuant thereto a temporary injunction issued July 28th by Fayette District Court clerk.

July 29th the original notice, petition and Justice Moore's related order were served upon Moorhatch. The same day like notice was given Sound Storm and Wadena Company by service upon Clarence Cosson, registered agent in Des Moines.

Wednesday, July 29, 1970, at 1:15 p. m., Sound Storm and Moorhatch, appearing by counsel, filed application to dissolve the above mentioned temporary injunction, and a motion for change of venue. Judge E. B. Shaw accordingly transferred place of trial to Clayton County and ordered hearing on the dissolution application be had at 2:00 p. m., July 30, 1970, before Judge Thomas H. Nelson.

July 30, 1970, all parties, including original defendants, appearing by counsel before Judge Nelson, submitted briefs and arguments. At 7:13 p. m. that date a decree was entered which provided, in part:

"The Court, prior to argument, announced that he had determined that it was impractical, with the time available, to take evidence or explore the questions of whether the matters set forth in the Petition and supporting Affidavit for Injunction constituted sufficient grounds for the issuance of an injunction and for that reason the same shall be assumed to be true and to constitute sufficient grounds for the issuance of the Injunction, providing the proper procedural steps have been taken prior thereto. It was stipulated and agreed that, for the purpose of consideration of the Application to Dissolve and Vacate the Injunction, it may be so considered."

Judge Nelson also then found the restraining order issued by Justice Moore had enjoined the general and ordinary business of a corporation without notice and hearing as required by Rule 326, Iowa R.Civ.P. Thereupon that injunction was thus modified:

"Defendants and each of them are hereby temporarily enjoined and restrained from the violation of Sec. 444.18 and Sec. 332.23 of the Code of Iowa and the rules of the Iowa State Department of Public Health, or the commission or the encouraging of the commission of any public offense in connection with the promotion of a music or art festival in Fayette County, Iowa; otherwise Defendants are relieved from the effect of the Injunction issued in the above entitled cause July 28, 1970."

July 31, 1970 at 3:30 p. m., Attorney General filed an application for a show cause order thereby alleging original defendants had sold tickets and attracted crowds to the festival location, and arranged for parking areas and other facilities at the site, all in violation of Justice Moore's order. These acts were alleged to have occurred July 29 and 30, 1970. Attorney General also asserted original defendants violated Judge Nelson's July 30th injunction by encouraging bands to attend at the festival site, continuing to there construct the stage, leasing additional parking facilities, installing toilets, roads and other facilities, setting up concessions, and generally doing things to promote and conduct the festival, all without obtaining permits required by The Code 1966, Sections 444.-18, 332.23, and absent compliance with applicable Iowa Department of Health regulations. This application was also aided by Turner's affidavit.

July 31, 1970, at 3:31 p. m., Judge Shaw entered a show cause order. In response defendants thereto, James A. Crill, Murray Moorhatch, William J. Schereck, Jr., Charles J. Duffy, Michael Berkos, Michael Driscoll and James Price, appeared with counsel. They moved for a continuance in order to prepare for hearing. That motion was granted for the reasons stated and because of the fact it was approximately 6:00 p. m. when the proceeding commenced.

October 9, 1970, Judge Joseph C. Keefe directed hearing be had on the show cause order at 10:00 a. m., Monday, November 30, 1970, in the courtroom at West Union, Fayette County.

November 23, 1970, Sound Storm, Crill, Moorhatch, Schereck, Duffy, Berkos, Driscoll and Price filed answer to the show cause order. The next day Wadena Company filed its answer thereto.

These responding defendants thereby admitted preparations for the festival continued July 29 and 30 "upon demand of the plaintiffs and their agents", but denied any announcement was made to the effect they were proceeding with the festival or continuing to sell tickets. The above identified original defendants also alleged that other than Moorhatch or Crill, none of them had notice of the injunction until after Judge Nelson's July 30th order. Duffy, Berkos and Driscoll asserted they were not at the rock festival site anytime July 29th but except for Duffy they were there present July 30th. These original defendants also denied having encouraged bands to perform at the festival after issuance of the injunction, alleging in that regard bands had been engaged prior to issuance of the injunction. They further denied having violated the injunction by failing to obtain the required permits, or that Iowa Department of Health regulations had been violated.

Original defendants additionally asserted no "show" had been held prior to 6:00 p. m., Friday, July 31st and by that time they were relieved, under Judge Shaw's order, from obtaining the aforesaid permits.

November 30, 1970, the show cause matter came on for hearing but was continued on application of plaintiffs due to inability of Turner and Duffy, to then appear. Hearing was then ordered held at 10:00 a. m., December 1st.

At 9:36 a. m., December 1st, Turner filed an additional affidavit alleging original defendants were guilty of contempt by violating Judge Nelson's July 30th restraining order in that they:

"* * * did commit a public offense by keeping and maintaining a place which was there and then used in Fayette County, near Wadena, for the keeping and selling of narcotic drugs, and which constituted a * * * violation of § 204.13, Code of Iowa, 1966, and in violation of Judge Nelson's order against the commission of a public offense."

In course of the December 1st proceedings trial court limited evidence so as to exclude the allegations in Attorney General's "Affidavit Showing Further Con-

tempt" and ordered a separate hearing as to those allegations be held February 16, 1971.

January 12, 1971, Judge Keefe entered an order by which it was determined the writ issued pursuant to Justice Moore's order, *supra,* because of noncompliance with rule 326, Iowa R.Civ.P., did not constitute a basis upon which to adjudicate original defendants guilty of contempt for conduct prior to 7:13 p. m., July 30, 1970.

Judge Keefe also held the restraining order issued pursuant to Judge Nelson's order, *supra,* was after appearance and hearing so it could not be void. This was foundationed upon the theory that since the court had jurisdiction of the parties and subject matter a valid writ was issued even though it may have been erroneous or improvidently granted. Thereupon the court concluded defendants could be held accountable for failure to comply therewith.

February 16, 1971, an evidentiary hearing was held before Judge Keefe on the "Affidavit Showing Further Contempt".

Trial judge then found original defendants had (1) failed to comply with Judge Nelson's modified temporary injunction by violating Code §§ 332.23, 444.18 and (2) further violated the modified injunctive provision prohibiting them from committing or encouraging the commission of a public offense by violating § 204.13, which forbids the maintenance of a place resorted to by addicts or used for keeping or selling drugs.

March 22, 1971, Judge Keefe accordingly entered an order by which Michael Berkos, Murray Moorhatch, Charles Duffy, William J. Schereck, Jr., James A. Crill, Sound Storm and Wadena Company were each adjudged guilty of two separate acts of contempt. Thereupon they were respectively fined $500 for each offense or a total of $1000, and in lieu of payment all, except the corporate defendants, ordered

committed to the Fayette County Jail one day for each $5.00 of unpaid fine. The same date defendants paid half the total fine and were granted two weeks for payment of the balance.

March 24, 1971, original defendants, here the plaintiffs, made application to this court for certiorari review. A writ was thereupon issued.

July 1, 1971, respondent Judge filed herein a motion to quash or dismiss this proceeding upon the basis original defendants had paid one-half their fines and were thereby precluded from benefit of review. August 5, 1971, this court overruled that motion. It is here again urged and argued.

Relevant facts will be later referred to as they relate to issues instantly presented.

May 16, 1973, Charles J. Duffy and Michael Berkos formally withdrew their petition for certiorari. Thus Sound Storm Enterprises, Inc., Wadena Development Company, Murray Moorhatch, William J. Schereck, Jr., and James Crill are the only remaining original defendants here seeking review. They will be hereafter referred to as petitioners.

Issues now broadly raised are, in essence respondent trial judge exceeded his jurisdiction or otherwise acted illegally in adjudging petitioners guilty of contempt because (1) the aforesaid modified temporary injunction was void by reason of vagueness and uncertainty, and because a court of equity cannot enjoin the commission of criminal acts, (2) said modified temporary injunction also impermissibly restrained petitioners from violating Code § 204.13 absent an evidentiary hearing, and (3) in any event the writ fails to disclose by clear and convincing evidence petitioners violated the instantly involved temporary injunctions.

I. Before entertaining these matters it is appropriate we dispositively resolve respondent's motion to quash or dismiss this proceeding.

■ It must at the outset be conceded certiorari will not lie where one has fully complied with an order of court and thus obviated all liability for contempt. See Dugane v. Smith, 140 Iowa 674, 119 N.W. 73 (1909). See also Ames General Cont., Inc. v. Iowa Employment Sec. Com'n, 200 N.W.2d 538, 540–541 (Iowa 1972); Annot., 33 A.L.R.3d 589, 624–626.

■ But here, as aforesaid, at time of the March 22, 1971, contempt adjudication petitioners paid only half the total fines assessed. This does not constitute a review-precluding satisfaction of judgment. See generally 14 Am.Jur.2d, Certiorari, § 52; 4 Am.Jur.2d, Appeal and Error, §§ 260–262; 14 C.J.S. Certiorari § 135*l*; 17 C.J.S. Contempt § 124(1) at 331–332; 5 C.J.S. Appeal and Error § 1354(6); Annot., 39 A.L. R.2d 153, 176–186.

■ II. An action for injunctive relief is a civil suit standing in equity. See Sayles v. Bennett Avenue, etc., Corp., 258 Iowa 628, 634, 138 N.W.2d 895 (1965); 42 Am.Jur.2d, Injunctions, § 1; 43 C.J.S. Injunctions § 162.

On the other hand:

"Contempt proceedings are commonly treated as criminal in nature even when they arise in civil actions. While proof of the acts constituting the contempt need not be beyond a reasonable doubt, clear and satisfactory proof is required. Huston v. Huston, 255 Iowa 543, 549, 122 N.W.2d 892, 896, and citations; Brody v. District Court, 250 Iowa 1217, 1221, 98 N.W.2d 726, 729, and citations.

"'We have held in several certiorari actions questioning a judgment of contempt that we will review the evidence for the purpose of determining whether proof of the contempt is clear and satisfactory. The cause is not triable de novo here but the judgment does not have the full force and effect of a jury verdict. While we give weight to the trial court's findings we are not bound by them.' Huston v. Huston, supra.

"It is for this court to say, having due regard for the findings below, whether the contempt has been clearly and satisfactorily shown.

"To determine that question we review the evidence submitted at the citation hearing." American Sec. Ben. Assn. v. District Court, 259 Iowa 983, 988–989, 147 N.W.2d 55, 59 (1966).

See also Foust v. Denato, 175 N.W.2d 403, 404 (Iowa 1970); Orkin Exterminating Co., Inc. (Arwell Div.) v. Burnett, 160 N. W.2d 427, 431 (Iowa 1968).

■ III. It is also understood that, as stated in Newby v. Woodbury County District Court, 259 Iowa 1330, 1341–1342, 147 N.W.2d 886, 893 (1967):

"We have held in at least three certiorari actions that 'an inferior tribunal' (see rule 306, R.C.P.) does not act in excess of jurisdiction or otherwise illegally as to a matter not before it and courts will not review questions not presented to the so-called inferior tribunal. O'Connor v. Youngblade, 250 Iowa 808, 814, 96 N.W.2d 457, 461, and citations."

IV. Did the temporary injunction upon which respondent acted improperly enjoin commission of a crime and was it impermissibly vague and uncertain?

By this restraining order petitioners were in effect, first temporarily enjoined from conducting a festival without benefit of those permits required by The Code 1966, Sections 332.23, 444.18 and absent compliance with State Department of Health regulations. As noted in § 332.23, it is an enactment "For the purpose of promoting the health, safety, recreation, and general welfare of the people * * *." To that end county boards of supervisors are specifically empowered to regulate and license any amusement parks or other business establishment outside a city or town, open to the public and located on or adjacent to a public road. And § 444.18 says, in essence, no rural public exhibitions, traveling show, or other public

display shall be conducted absent a required license. Also, by Code § 444.19 a fine and penalty may be imposed for any violation of § 444.18.

Thereupon petitioners argue, equity cannot enjoin the commission of criminal offenses. This may, as a general rule, be correct. See 42 Am.Jur.2d, Injunctions, § 157; 43 C.J.S. Injunctions § 150.

■ It still remains, however, that where as in this case a statutory enactment is regulatory in nature having for its primary purpose the promotion of public interest and welfare, then attendant criminality neither gives nor ousts jurisdiction in equity. See Grundy Center v. Marion, 231 Iowa 425, 431–432, 1 N.W.2d 677 (1942); 42 Am.Jur.2d, Injunctions, § 160; 43 C.J.S. Injunctions § 152. See also McClintock on Equity, § 164 (2d ed. 1948).

■ Petitioners' argument regarding absence of right in equity to enjoin a violation of §§ 332.23 and 444.18 is without substance.

■ V. Moreover, the contempt adjudication here entered upon a violation of those statutes was foundationed upon a sufficiently clear, certain and readily understandable writ.

■ It is to be prefatorily understood, a statute must give fair warning of conduct thereby made a criminal offense. In other words, no person may be thus held responsible for actions not reasonably understood to be statutorily proscribed. See Bouie v. City of Columbia, 378 U.S. 347, 350–351, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964).

But as the court said in United States ex rel. Clark v. Anderson, 356 F.Supp. 445, 450 (D.Del.1973):

"In applying that standard, a legal fiction is applied whereby a person of ordinary intelligence, in order to determine whether his intended conduct is lawful is under a duty to ascertain the state law or laws which might be applicable to his conduct. If the state laws, including established rules of judicial construction, have sufficient publication as to be discoverable by reasonable means, and if the statute itself contains ascertainable standards to determine what it proscribes, then the actor can be held criminally liable for his conduct. See Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908)."

See also United States v. Harriss, 347 U.S. 612, 617–618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); 17 Am.Jur.2d, Contempt, § 52.

This court also held in Dairyland, Inc. v. Jenison, 207 N.W.2d 753, 754 (Iowa, opinion filed May 1973):

"A decree is susceptible of interpretation on the same basis as other written instruments. 'The determinative factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly implied as well as to that which is expressed.' Whittier v. Whittier, 237 Iowa 655, 663, 23 N.W.2d 435, 440 (1946); see also Flynn v. Lucas County Memorial Hospital, 203 N.W.2d 613, 615 (Iowa 1973); Cooper v. Cooper, 158 N.W.2d 712, 713 (Iowa 1968)."

We are satisfied Code §§ 332.23 and 444.18 must be deemed unambiguous and to have enjoyed sufficient publication to make them and their meaning clearly discernible to all.

Mindful of the foregoing it is to us evident Brody v. District Court, 250 Iowa 1217, 98 N.W.2d 726 (1959); Lynch v. Uhlenhopp, 248 Iowa 68, 78 N.W.2d 491 (1956); Henry & Sons v. Rhinesmith, 219 Iowa 1088, 260 N.W. 9 (1935), supportively cited by petitioners, are all so factually distinguishable on this point as to instantly be of little or no force and effect.

VI. Petitioners also urge, in aid of a reversal the contempt triggering modified temporary injunction was invalid as it relates to conduct in violation of Code § 204.13. Our holdings *supra* serve in large part to effectively dissipate this contention. Additionally, however, petitioners maintain trial court exceeded its jurisdiction or otherwise acted illegally in (1) issuing the aforesaid temporary writ, with regard to the corporate petitioners, absent an evidentiary hearing, and (2) enjoining a nuisance without such hearing.

Section 204.13 states:

"Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep or maintain such a common nuisance."

And Rule 326, Iowa R.Civ.P. provides:

"Before granting a temporary injunction, the court may require reasonable notice of the time and place of hearing therefor to be given the party to be enjoined. *Such notice and hearing must be had for a temporary injunction to stop the general and ordinary business of a corporation,* or the operations of a railway or of a municipal corporation, or the erection of a building or other work, or the board of supervisors of a county, *or to restrain a nuisance.*" (Emphasis supplied).

■ An examination of the record set forth above discloses the July 30, 1970 modified writ by which petitioners were enjoined from committing or encouraging commission of any public offense in connection with the festival was issued only after they had appeared before Judge Nelson and then submitted themselves to jurisdiction of the court. See Humboldt, etc., Auction v. B & H Cattle Co., 261 Iowa 419, 430, 155 N.W.2d 478 (1967). That alone negates any claim to the effect rule 326 was violated by enjoining the ordinary business of petitioner corporations absent a hearing.

VII. We turn now to the assertion § 204.13 makes certain activities a "nuisance", therefore the modified temporary writ was void, absent a hearing prescribed by rule 326, quoted above.

■ Nuisances are usually categorized as *per se* on one hand, or *per accidens* on the other. The former is an act, occupation or structure which is a nuisance at all times, under any circumstances. The latter is that which becomes a nuisance by reason of surrounding circumstances. See Bader v. Iowa Metropolitan Sewer Company, 178 N.W.2d 305, 306–307 (Iowa 1970); Dill v. Excel Packing Company, 183 Kan. 513, 331 P.2d 539, 545 (1958); State v. WOR–TV Tower, 39 N.J.Super. 583, 121 A.2d 764, 767 (1956). See also State of Maryland, Dept. of N. Res. v. Amerada Hess Corp., 350 F.Supp. 1060, 1068–1069 (D.Md.1972); 58 Am.Jur.2d, Nuisances, §§ 12–13; 66 C. J.S. Nuisances § 3.

■ Thus it must be conceded § 204.13 does serve to make certain prescribed conduct a nuisance *per se.* Compare The Code 1973, Sections 204.407, 204.503.

The Code 1966, Section 204.20 admittedly provided criminal punishment for a violation of any provision of chapter 204. See in this regard 58 Am.Jur.2d, Nuisances, § 185; 66 C.J.S. Nuisances § 159. Even so, as heretofore determined, the existence of a statutory criminal sanction instantly negated neither the right to injunctive relief nor imposition of attendant penalty for any contumacious infraction thereof.

■ In any event, as previously observed, petitioners entered appearances prior to issuance of the writ here in question. Therefore the controverted court order was at most voidable, not void. And, if merely erroneous, improvidently granted

or irregularly obtained, the enjoined parties could still be punished for any attendant contemptuous behavior. See Harding v. McCullough, 236 Iowa 556, 560–561, 19 N.W.2d 613 (1945); Orr v. Hamilton, 202 Iowa 345, 347, 209 N.W. 285 (1926); State v. Baldwin, 57 Iowa 266, 270–271, 10 N.W. 645 (1881); 17 Am.Jur.2d, Contempt, § 43; 43 C.J.S. Injunctions § 259.

VIII. Pursuing the matter further, petitioners maintain any asserted transgression on their part of the temporary writs was not here established by requisite proof.

As heretofore noted proof of contempt must be clear and satisfactory.

In order to properly determine sufficiency of the evidence under that standard it is essential we allude to the factual situation involved.

The record discloses Schereck was president of Sound Storm and executive director of the festival, Crill an associate producer-administrator of the affair, and Moorhatch acted as security consultant.

Sound Storm, an Illinois corporation authorized to do business in Iowa promoted the show. Wadena Company, an Iowa corporation, purchased then leased the festival site farm to Sound Storm for such usage.

A review of the record also clearly and satisfactorily reveals (1) the festival was launched and all attendant arrangements made before requisite health, sanitation and safety permits were secured or essential facilities arranged; (2) petitioners were first temporarily enjoined from proceeding absent required permits, and without adequate public health and safety provisions being effectuated; (3) next, they were also thereby restrained from keeping or maintaining a place where narcotic addicts gathered for that purpose or where narcotic drugs were illegally kept or sold; (4) nothing more than futile token or simulated efforts were made by petitioners to effect compliance with the terms, spirit and intent of the restraining writs; (5) the situation was aggravated by the fact that petitioners admitted more than 20,000 people to the site upon payment by each of a $15 admission fee; (6) bands there performed on the stage with Schereck serving as part-time master of ceremonies; (7) sanitation, health, safety and general welfare provisions were inadequate; (8) the sale and usage of marijuana, hashish, LSD, cocaine and other like substances were uncontrollably rampant at the site; (9) the peace, health and safety of people attending the festival and living within the general area was resultantly endangered; and (10) petitioners contumaciously created a situation beyond the power of law enforcement and health officials to reasonably police, manage, supervise or regulate.

Briefly stated, petitioners admit having triggered this avalanche but claim inability to later stop it and they therefore should not be punished for failure to comply with the temporary restraining orders here in question.

From this flows the conclusion, petitioners created and brought on themselves the disability, if any, to comply with the aforesaid court orders. In other words, the situation did not change after issuance of the writs, but rather continued pursuant to petitioners' self-initiated premature plans and arrangements. It therefore follows, petitioners failed to establish a legally recognizable defense to the contempt charges leveled against them. See 42 Am.Jur.2d, Injunctions, § 340; 17 Am.Jur.2d, Contempt, § 51; 43 C.J.S. Injunctions § 266. See generally Foust v. Denato, 175 N.W.2d at 405; Brody v. District Court, 250 Iowa 1217, 1226, 98 N.W.2d 726 (1959).

■ Under the circumstances respondent properly found proof of contempt by petitioners was established by clear and satisfactory evidence, and they were subject to punishment for having violated both provisions of the temporary writ. See 17 Am.Jur.2d, Contempt, § 109; 43 C.J.S. Injunctions § 265.

IX. In reaching this conclusion it is neither necessary nor do we apply the questioned judicial notice concept invoked by trial court to the effect rock festivals have given rise to drug sales and use. Rather, our holding in this area is foundationed upon the undisputed fact these petitioners contumaciously established and maintained a place resorted to by narcotic addicts or used for the illegal keeping or selling of controlled substances. In other words, trial court's ruling with regard to the foregoing was correct even though based upon a different ground. See Swartz v. Bly, 183 N.W.2d 733, 739–740 (Iowa 1971).

X. Petitioners further take the position officers, directors and employees of a corporation cannot be found in contempt unless they intentionally participate in the contemptuous acts. This contention is of no aid to these petitioners.

At the threshold it is well established a corporate entity may be guilty of contempt and accordingly fined. See 17 Am.Jur.2d, Contempt, § 12; 17 C.J.S. Contempt § 34.

These same citations make it abundantly evident that where, as in the case now before us, writs are directed to the corporation and to its officers, agents or employees, all are equally amenable to punishment.

Moreover, the record before us clearly demonstrates each and all of the enjoined officers, agents and employees of plaintiff corporations actively participated in the conduct proscribed by the two writs.

In support of their position petitioners lean heavily on American Sec. Ben. Assn. v. District Court, 259 Iowa 983, 147 N.W. 2d 55 (1966). But that case involved a conspiracy to defraud and evidence supportive of intentional participation therein with a view to furtherance of the common design was found to be inadequate as to some supervisory parties. In brief, the cited case is so factually dissimilar from the one now before us as to be of no persuasive force regarding the problem at hand.

XI. We find no basis upon which to hold respondent judge exceeded his jurisdiction or otherwise acted illegally in adjudging petitioners in contempt for violation of each temporary writ instantly involved. Judgment accordingly entered must stand.

Writ annulled.

All Justices concur, except MOORE, C. J., who takes no part.