# In the Iowa Supreme Court

No. 24–1331

Submitted April 15, 2026—Filed June 19, 2026

**Eagle Rise Developments, LLC, Troy Scott Wilbur** and
**Alexander Scott Wilbur,**

Plaintiffs,

vs.

**Iowa District Court for Clinton County,**

Defendant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Clinton County, Brian Wright, magistrate, and Kimberly K. Shepherd, district associate judge.

Parties who were held in contempt of court by a magistrate seek a writ of certiorari. **Decision of Court of Appeals Vacated; Writ Sustained.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Billy J. Mallory and Trevor A. Jordison of Mallory Law, Urbandale, for plaintiffs.

Patrick J. O'Connell and Madison P. Huntzinger of Lynch Dallas Legal, Cedar Rapids, for defendant.

**Oxley, Justice.**

The City of Clinton sought to hold Eagle Rise Developments, LLC (Eagle Rise) in contempt of court after it refused to comply with the district court's municipal infractions order to repair the roof of its building. The court ultimately entered an order finding Eagle Rise and its two member-managers, Troy Wilbur and Alexander Wilbur (collectively "petitioners"), in contempt. The court required both Troy and Alexander to pay a $100 penalty and serve thirty days in jail, and it held Eagle Rise in contempt without imposing a punishment. Eagle Rise, Troy, and Alexander petitioned for a writ of certiorari, challenging the court's contempt order based on the City's alleged failure to provide the petitioners with proper notice of the contempt proceeding.

Civil contempt proceedings are quasi-criminal because they can subject a contemnor to jail time. So, "[b]efore punishing for contempt, . . . the offender must be served personally with an order to show cause against the punishment" and given "a reasonable time" to respond. Iowa Code § 665.7 (2024). Here, the show cause order was directed only to Eagle Rise—the defendant subject to the municipal infractions order—not to Troy or Alexander in their individual capacities. Troy and Alexander were therefore not provided with notice that they were personally subject to contempt, as required by statute. And while Troy appeared at the hearing and defended Eagle Rise, the lack of proper notice denied Eagle Rise the "reasonable time" to respond to which it was entitled.

On further review, we sustain the writ of certiorari challenging the district court's order holding Eagle Rise and its member-managers in contempt.

**I. Factual Background and Proceedings.**

Troy and Alexander Wilbur[1] run a father-and-son business as the only two member-managers of Eagle Rise. Eagle Rise purchased a former middle school building in Clinton eight months before the August 2020 derecho ripped through Iowa and damaged the property. Residents complained to the City about the building sitting vacant in a state of disrepair for more than a year after the storm, so the City inspected the property in October 2021. The City found multiple violations of the Clinton City Code's property maintenance ordinances. Eagle Rise failed to register the property as vacant or rectify the maintenance issues identified by the City. The City cited Eagle Rise with municipal infractions in the Iowa District Court for Clinton County in March 2022.

**A. Municipal Infractions Proceedings.** The case went to trial on the district court's small claims docket. *See* Iowa Code § 364.22(6)(*a*) ("In municipal infraction proceedings . . . [t]he matter shall be tried before a magistrate . . . in the same manner as a small claim."). Eagle Rise proceeded pro se through Troy at the June 23 small claims trial. It lost, and the magistrate entered an order on August 7 that required Eagle Rise to pay a $6,500 penalty, register the property as vacant, abate certain non-roof-related violations of the city building code, and "completely repair the roof of the building by installing a completely new rubber membrane." The order noted that if Eagle Rise failed to comply with the municipal infractions order, the City may file a rule to show cause why Eagle Rise should not be held in contempt of court.

**B. First Contempt Proceedings.** Eagle Rise replaced the school's gymnasium roof but not the roof over the rest of the building. Nor did it pay the

---

[1]We refer to them throughout the opinion by their first names for ease of reference.

$6,500 civil penalty. So, on July 10, 2023, the City filed an application for rule to show cause why Eagle Rise was not in contempt of the August 2022 order.

The City served Alexander personally as the registered agent of Eagle Rise. A hearing was held on that show cause order, where Troy and Alexander both appeared. The court found that Troy and Alexander, "as member-managers of Eagle Rise," had willfully disobeyed its order. It ordered that Eagle Rise, the defendant in the matter, was in contempt of court. It also ordered Troy and Alexander to each serve thirty days in jail. The order gave them fourteen days to purge the contempt by paying the $6,500 penalty and registering the building as vacant. Troy and Alexander did so, and the court set aside the order to serve time in jail.

The City attempted to present evidence about Eagle Rise's receipt of insurance funds at the contempt hearing, but the court excluded it as hearsay. Without that evidence, the court could not determine whether Eagle Rise willfully failed to replace the rest of the roof or whether it merely lacked the funds to do so. Nonetheless, its order expressly stated that "Defendant remains under obligation to abide by the Court's August 7, 2022 Order regarding abatement of City Code and IPMC violations at the Property."

**C. Second Contempt Proceedings.** Less than a month later, the City filed another application for rule to show cause. The City asserted that Eagle Rise intentionally repaired only the roof over the gymnasium rather than the entirety of the building's roof, as required by the court's order. On January 15, 2024, the court "ORDERED that Defendant Eagle Rise Developments, LLC, by and through its Member-Managers, Troy Wilbur and Alexander Wilbur, appear before the Court to show cause why it should not be held in contempt at the Clinton County Courthouse located at 612 N 2nd Street, Clinton, Iowa, 52732 on March 14,

2024 at 2:00 p.m." The order further provided: "If Defendant fails, without good cause, to appear as provided in response to this Rule to Show Cause, a bench warrant shall issue for the arrest of Defendant."

This time, the City had trouble serving the petitioners with the notice to show cause, as required by statute:

> Before punishing for contempt, unless the offender is already in the presence of the court, the offender must be served personally with an order to show cause against the punishment, and a reasonable time given the offender therefor; or the offender may be brought before the court forthwith, or on a given day, by warrant, if necessary.

Iowa Code § 665.7.

The City made ten unsuccessful attempts to effect personal service—four by the county sheriff's office and six by private process servers. The county sheriff filed an affidavit of nonservice stating that he left a card at the registered address of Eagle Rise saying to contact the sheriff's office. That address was also Troy and Alexander's last-known address and where personal service was previously successful in the underlying action. The sheriff's request went unanswered. Process servers were similarly unsuccessful in their attempts at personal service despite seeing lights turned on inside the residence, a dog inside the property, and the trash receptacles being set out and brought in between their attempts. No one would answer the door. One process server's affidavit detailed how she saw Troy's wife enter the residence and then refuse to come to the door. The same process server also went to Troy's father's address, and Troy's father called Troy but was told not to divulge any information. Troy's father then told the process server that he did not want to get involved.

The contempt proceeding was continued three times while the City tried to effect personal service to comply with Iowa Code section 665.7. After its

numerous unsuccessful attempts, the City requested that the court allow it to serve by publication because the petitioners were avoiding personal service. The court found that "Troy and Alex[a]nder were evading service at a time they knew the City was seeking said service" and granted the City's request. It entered an order continuing the hearing to July 11 and allowing the City to serve "Troy and Alexander Wilbur, member-managers for the Defendant, by publication as permitted by Iowa R. Civ. P. 1.310(8), 1.310(11) and 1.313."

The City published notice in the Clinton Herald for the weeks of May 4, 11, and 18, 2024. *See* Iowa R. Civ. P. 1.313. The City filed an affidavit with proof of publication one day before the July 11 hearing. It did not, however, mail a copy of the notice to Eagle Rise, Troy, or Alexander. *See* Iowa R. Civ. P. 1.311(1) ("In every case where service of original notice is made upon a known defendant, respondent, or other party by publication, copy of the notice shall also be sent by ordinary mail addressed to such party at the party's last-known mailing address, unless an affidavit of a party or that party's attorney is filed stating that no mailing address is known and that diligent inquiry has been made to ascertain it.").

Troy appeared at the July 11 contempt hearing without an attorney; Alexander was allegedly in the courthouse but did not come to the courtroom. Troy objected at the beginning of the hearing, claiming that neither he nor Alexander received notice of the show cause order or the hearing. He "just happened to find out" about the hearing the day before, but his attorney was not available to attend the hearing with him. Troy also claimed that the newspaper notices used to serve Eagle Rise by publication were unavailable online when he attempted to look them up the day before the proceeding. The magistrate denied Troy's challenge to improper service and his request for a continuance until his

lawyer could be present, reasoning that he "somehow" received actual notice and appeared "as one of the member managers of Eagle Rise."

The magistrate then took evidence in the form of ten exhibits and testimony from two witnesses for the City. Troy contested the merits by making objections, cross-examining the City's witnesses, and then testifying himself. The court entered an order on July 18 that held Eagle Rise, Troy, and Alexander in contempt of the court's August 2022 municipal infractions order. It concluded that the City proved beyond a reasonable doubt that "Eagle Rise, specifically Troy Wilbur, very deliberately determined to fix only the gym roof, rather than comply with the Order by fixing the entire roof." It also concluded that Alexander was "fully aware" of Eagle Rise's obligations and had "lawful control over what [Eagle Rise] does or fails to do." The magistrate entered an order finding "that Eagle Rise . . . and Troy Wilbur and Alexander Wilbur, individually, are in contempt of the Court's August 7, 2022, Order." The court ordered Troy and Alexander to each pay a $100 penalty and serve thirty days in jail. The contempt order provided that fifteen days of each sentence was suspended and could be purged if Eagle Rise caused the roof to be repaired by November 30, 2024. The order did not impose any punishment specifically on Eagle Rise.

**D. Appeal to District Court.** Troy and Alexander each filed a notice of appeal from the magistrate's ruling to the district court. The district court summarily denied the appeals because they had "not filed grounds for an appeal."[2] Eagle Rise, Troy, and Alexander then filed a petition for writ of certiorari

---

[2]Contrary to the district court's basis for denying judicial review, Iowa Code section 631.13 does not require a small claims party to state grounds for the appeal; indeed, verbal notice provided to the magistrate after the small claims hearing that the party wishes to appeal is sufficient to perfect the appeal. Iowa Code § 631.13(1) ("An appeal from a judgment in small claims may be taken by any party by giving oral notice to the court at the conclusion of the hearing, or by filing a written notice of appeal with the clerk within twenty days after judgment

to challenge the magistrate's contempt order.[3] Specifically, they argued that the district court lacked personal and subject matter jurisdiction, that they were deprived of due process, and that the failure to comply with the order was not proven beyond a reasonable doubt.

**E. Writ of Certiorari Proceedings.** We granted the petition for writ of certiorari and transferred the case to the court of appeals. The court of appeals rejected the challenge to subject matter jurisdiction because Iowa Code section 665.2 permits courts to decide contempt cases. *See* Iowa Code § 665.2. It then held that the magistrate had jurisdiction over Troy and Eagle Rise because Troy appeared at and participated in the contempt proceeding on behalf of Eagle Rise, waiving any challenges to improper service. But it concluded that the magistrate lacked jurisdiction over Alexander because he was neither present at the contempt hearing nor properly served with notice. Finally, the court of appeals held that the arguments about due process and the sufficiency of the evidence were not preserved for appellate review. So, the court of appeals annulled the writ as to Troy and Eagle Rise, but it sustained the writ as to Alexander.

Eagle Rise and Troy applied for further review, arguing that the court of appeals erred in the following ways: by treating service via publication as a permissible way to provide notice of a contempt proceeding, by finding there was jurisdiction over Eagle Rise and Troy despite the City's noncompliance with section 665.7 and the rules of civil procedure, by concluding there was subject

---

is rendered."). Even though the small claims appeal form includes a place to state the "grounds for appeal," that is not a statutory requirement. So, the district court's summary dismissal was improper.

[3]We also granted the accompanying motion for a temporary stay of proceedings in district court pending an order on the petition for writ of certiorari and vacated the mittimus and orders for commitment that had been issued the prior day.

matter jurisdiction, and by holding that they did not preserve error on their due process and sufficiency arguments. We granted their application.

**II. Analysis.**

**A. Standard of Review.** We review certiorari actions and findings of contempt for correction of errors at law. *E.g.*, *Spitz v. Iowa Dist. Ct. for Mitchell Cnty.*, 881 N.W.2d 456, 464 (Iowa 2016); *City of Dubuque v. Iowa Dist. Ct. for Dubuque Cnty.*, 725 N.W.2d 449, 452 (Iowa 2006). To the extent a constitutional challenge is involved, our review is de novo. *Spitz*, 881 N.W.2d at 464. In reviewing "the jurisdiction of the district court and the legality of its actions," we will sustain a writ of certiorari where "the district court's finding of facts are not supported by substantial evidence or when the court has not applied the law properly." *Id.* (first quoting *Ary v. Iowa Dist. Ct. for Benton Cnty.*, 735 N.W.2d 621, 624 (Iowa 2007)).

**B. Subject Matter Jurisdiction.** The petitioners claim the court lacked subject matter jurisdiction because the statutory requirement in section 665.7 to personally serve an offender with a show cause order is a prerequisite to the court's jurisdiction. The petitioners confuse a court's subject matter jurisdiction with its authority to act in a particular case. Jurisdiction is a court's power to hear a particular type of case. *State v. Pagliai*, 30 N.W.3d 226, 229–30 (Iowa 2026). Authority, by contrast, refers to the court's "power to act in a case where it has jurisdiction." *Id.* at 230. "Once a case is within a court's adjudicatory power, other rules or statutes may limit the court's authority to act, but that does not make those provisions jurisdictional." *State v. Rutherford*, 997 N.W.2d 142, 144 (Iowa 2023); *see also State v. Erdman*, 996 N.W.2d 544, 549 (Iowa 2023) (" 'Jurisdiction,' as it is referenced in Iowa Code sections 232.8 and 232.45,

refers to the court's authority to adjudicate the charges, not its subject matter jurisdiction over such cases.").

Here, the Iowa Constitution vests the district court with jurisdiction over civil matters. Iowa Const. art. V, § 6 ("The district court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."). That constitutional grant of power was implemented by statute, which vests the district court with subject matter jurisdiction over civil matters, including municipal infraction proceedings. *See* Iowa Code § 364.22; *id.* §§ 602.6101, .6104(1), .6405. Further, the district court has inherent authority to enforce its orders by way of contempt proceedings. *Lutz v. Darbyshire*, 297 N.W.2d 349, 354 (Iowa 1980), *overruled on other grounds by*, *Phillips v. Iowa Dist. Ct. for Johnson Cnty.*, 380 N.W.2d 706 (Iowa 1986); *Knox v. Mun. Ct. of City of Des Moines*, 185 N.W.2d 705, 707, 709 (Iowa 1971); *Eicher v. Tinley*, 264 N.W. 591, 594 (Iowa 1936). The district court's inherent power to punish for contempt is supplemented by statute. *See* Iowa Code § 665.2.

Whether the notice provisions for a contempt proceeding in section 665.7 were satisfied goes to the court's authority, not its subject matter jurisdiction. *See Franklin v. State*, 905 N.W.2d 170, 172 (Iowa 2017) ("Although a court may have subject matter jurisdiction, it may lack the authority to hear a particular case for one reason or another." (quoting *In re Est. of Falck*, 672 N.W.2d 785, 789–90 (Iowa 2003))). The petitioners' challenge to the district court's subject matter jurisdiction therefore fails.

**C. Service of Process for Contempt Proceedings.** When one party refuses to comply with a court order, the other party may use contempt

proceedings to compel compliance. *See Spitz*, 881 N.W.2d at 464–65. "The power of a court to impose sanctions for failure to abide by its orders is 'essential to the efficient discharge of judicial functions.'" *Lutz*, 297 N.W.2d at 352 (quoting *Yocum v. Gaffney*, 131 N.W.2d 826, 828 (Iowa 1964)). Thus, "[i]f there is jurisdiction of the parties and legal authority to make an order, it must be obeyed, however erroneous or improvident." *Id.*

A proceeding to hold a party in contempt for refusing to follow a court's order is supplementary to the underlying action, yet largely independent of it. *First Congregational Church of Bloomington v. City of Muscatine*, 2 Iowa (Clarke) 69, 71 (1855). The general assembly requires that a person facing a charge of indirect contempt—that is, contempt committed outside the presence of the court, *Spitz*, 881 N.W.2d at 465 & n.6—must be given notice before the court punishes them for contempt, *see* Iowa Code § 665.7; *Sharkey v. Iowa Dist. Ct. for Dubuque Cnty.*, 461 N.W.2d 320, 323 (Iowa 1990) (explaining that section 665.7 required personal service for "the initiation of a contempt proceeding"); *Opperman v. Sullivan*, 330 N.W.2d 796, 797 (Iowa 1983) (holding that the court's prior exercise of jurisdiction over a party to a dissolution action "did not excuse the court from providing Opperman with notice of the contempt proceeding and an opportunity to defend"); *see also Christensen v. Iowa Dist. Ct. for Polk Cnty.*, 578 N.W.2d 675, 679 (Iowa 1998) ("An Iowa court's contempt power is inherent, but the power to punish may be validly limited by statute."); *Wilson v. Fenton*, 312 N.W.2d 524, 528–30 (Iowa 1981) (recognizing that "[t]he subject [of contempt] is preempted by statute in Iowa," which limited the district court's authority to impose prospective penalties).

Requiring a contemnor to be given notice through valid service of process is consistent with the due-process protections that we have recognized for these

quasi-criminal proceedings. *See McNabb v. Osmundson*, 315 N.W.2d 9, 11–12 (Iowa 1982) (en banc); *Knox*, 185 N.W.2d at 708–09. In Iowa, even civil contempt is quasi-criminal. *E.g.*, *State v. Mott*, 731 N.W.2d 392, 394 (Iowa 2007); *Phillips*, 380 N.W.2d at 707–09 (holding that civil contempt charges must be proven beyond a reasonable doubt because they are quasi-criminal, overruling cases allowing contempt on a showing of only clear and convincing evidence). A person charged with civil contempt is thus entitled to "be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." *Spitz*, 881 N.W.2d at 465 (quoting *McNabb*, 315 N.W.2d at 12); *accord Knox*, 185 N.W.2d at 708 (citing *In re Oliver*, 333 U.S. 257, 275 (1948); *Cooke v. United States*, 267 U.S. 517, 537 (1925)).

There are two ways to provide the required notice under section 665.7: "the offender must be served personally with an order to show cause," or the offender can be "brought before the court . . . by warrant, if necessary." Iowa Code § 665.7. Personal service is governed by Iowa Rule of Civil Procedure 1.305. The petitioners argue that the City failed to comply with the rules governing personal service on individuals and on corporate entities, neither of which allows for service by publication. *See* Iowa R. Civ. P. 1.305(1) (governing service on individuals who are not minors); *id.* r. 1.305(6) (governing service on partnerships and corporations). They also argue that even if the court could order service by publication, the City failed to comply with the rules governing service by publication in several respects. And they argue that, as individuals, neither Troy nor Alexander was given notice that they were subject to contempt

for Eagle Rise's failure to comply with the court's original August 2022 order to repair the roof.

The City concedes that its service by publication failed to comply with the requirement to also mail a copy of the notice to the last-known address of the party to be served. *See id.* r. 1.311(1). It argues that Troy and Eagle Rise nonetheless waived their challenge to the court's jurisdiction over them when Troy appeared at the hearing.

As an initial matter, we note that the parties conflate the issues of personal jurisdiction and service of process. We recently explained that there are two parts to a court obtaining personal jurisdiction over a party: "While the due-process and source-of-law requirements tell us whether a foreign defendant *can be* brought within a court's power, lawful service of process is what actually *brings* that defendant into court." *Kelchner v. CRST Expedited Inc.*, 29 N.W.3d 315, 322 (Iowa 2025) (citing *Lucas v. Warhol*, 23 N.W.3d 19, 23 (Iowa 2025)). Here, the court had already exercised jurisdiction over Eagle Rise as the named defendant in the underlying action and over Troy and Alexander in the first contempt proceedings—also within the underlying action. *See Opperman*, 330 N.W.2d at 797 ("[T]he contempt proceeding was merely supplementary to the main suit. Because the court had personal jurisdiction over Opperman in the dissolution action, it had sufficient basis under traditional notions of fair play and substantial justice to assert personal jurisdiction over him to enforce the decree."). To the extent the parties rely on cases addressing constitutional minimum contact concerns, the court's prior exercise of jurisdiction in the underlying action satisfies those concerns. *See id.*

Yet, even though a contempt action is supplementary to the underlying action where the court already exercised personal jurisdiction over the party,

section 665.7's personal service requirement serves as a prerequisite to the court's distinct authority to hold a person in contempt of court. The defendant must be given notice of the show cause order as required by section 665.7 to give the court the authority to hold that party in contempt.

We have previously referred to the notice requirements for contempt as jurisdiction or authority over the person. *See, e.g., id.* (holding that "[t]he court thus acquired personal jurisdiction over [the ex-husband] in the contempt proceeding" where he was personally served in Illinois with the show cause order); *Beauchamp v. Iowa Dist. Ct. in & for Cass Cnty.*, 328 N.W.2d 527, 527–28 (Iowa 1983) (identifying the "determinative question in this certiorari review of a contempt order [as] whether the district court acquired jurisdiction of plaintiff" and holding that a contemnor's special appearance challenging the method of service should have been sustained where the rule to show cause was served only on the contemnor's attorney); *Lutz*, 297 N.W.2d at 354 ("In the circumstances presented here [where notice of a contempt proceeding was provided only to the party's attorney], we hold trial court had no power to hold plaintiff in contempt of court."). To the extent that we have referred to complying with section 665.7's personal service requirements as conferring personal jurisdiction over a contemnor, we clarify that—as we discussed in *Kelchner v. CRST Expedited Inc.*—this is a reference to the "lawful service of process [that] actually *brings* that defendant" within the court's authority. 29 N.W.3d at 322. Compliance with section 665.7 goes to the court's authority to punish for contempt.

**D. The District Court Lacked Authority to Hold Troy or Alexander in Contempt.** With respect to Troy and Alexander, we must first address to whom the show cause order was directed. To reiterate, the court ordered that

Eagle Rise, Troy, and Alexander were all in contempt of court, but the punishment for contempt was directed only at Troy and Alexander individually. Each was ordered to pay a $100 penalty and serve thirty days in jail, fifteen of which were suspended and could be purged if Eagle Rise completed the roof repairs by November 30, 2024. The order did not impose any penalties or other punishment on Eagle Rise as an entity. Yet, Troy and Alexander were not individually named in the order to show cause.

Troy, Alexander, and Eagle Rise are independent "persons." *See* Iowa Code § 4.1(20) (" '[*P*]*erson*' means individual, corporation, limited liability company, . . . or any other legal entity."); *id.* § 489.108(1) ("A limited liability company is an entity distinct from its member or members."). This municipal infraction case was initiated against Eagle Rise as the sole defendant. The district court found Eagle Rise was in violation of multiple city property maintenance ordinances, and the district court issued an order of abatement and a civil penalty against Eagle Rise in August 2022. The first contempt proceeding and this contempt proceeding both arise out of Eagle Rise's failure to comply with that order.

It is not disputed that Troy and Alexander, as members of Eagle Rise, *could* be held in contempt for causing Eagle Rise to violate the district court's order. *E.g., Sound Storm Enters., Inc. v. Keefe*, 209 N.W.2d 560, 569 (Iowa 1973) (en banc) (finding that corporate officers may be punished for contempt where they participate in the proscribed conduct); *accord Wilson v. United States*, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs."); *Fargo Women's Health Org. Inc. v. Larson*, 391 N.W.2d 627, 633 (N.D. 1986) ("It is . . . well established that an officer or agent of a corporation may be found in

contempt of court if that officer or agent was responsible for the acts or inaction of the corporation that constituted the contempt."). We have long held that a "proceeding for contempt is necessarily personal; that is to say, the corporation, as such, cannot be imprisoned for contempt," but those officers "acting in and of it, violating the injunction, may." *First Congregational Church*, 2 Iowa at 74; *cf. Sound Storm Enters., Inc.*, 209 N.W.2d at 561–69 (annulling writ of certiorari from contempt order against three individual petitioners, two of whom were named defendants in the underlying action, where petitioners entered appearances prior to issuance of the restraining order directed at the corporations and the individuals).

But before such persons—e.g., company officers, executives, managers, or employees—can be held in contempt for causing the company to violate the district court's orders, those persons must be personally served with an order to show cause or brought before the court via warrant. Iowa Code § 665.7. The statute requires giving notice to "the offender." *Id.* The statute's use of the definite article "the" particularizes the noun that it precedes. *See Doe v. State*, 943 N.W.2d 608, 611 (Iowa 2020). It is a word of limitation that refers to a specific person, place, or thing. *See id.* Thus, "the offender" refers to each person sought to be held in contempt. Iowa Code § 665.7.

So, even if Troy and Alexander had been personally served with the order to show cause issued in this case, that service would have been deficient because there is no order to show cause directed to them in their personal capacities. The City's application for rule to show cause only requested that the court enter an order for rule to show cause "for the Defendant as to why it should not be found in contempt of Court." The terms "Defendant" and "it" are both singular and refer to Eagle Rise only. The district court's rule to show cause ordered only

"Defendant Eagle Rise Developments, LLC, by and through its Member-Managers" to appear and "show cause why it should not be held in contempt." The rule to show cause further directed the City to personally serve only "Defendant Eagle Rise Developments, LLC." There was no rule to show cause directed to Troy and Alexander to notify them that they personally could be held in contempt.

Because there was no application to show cause against Troy and Alexander and no order to show cause directed to Troy and Alexander, there was no notice to either of them of an order to show cause as "the offender" subject to potential punishment in compliance with the statute. *See Drywall Tapers & Pointers of Greater N.Y., Loc. 1974 of I.B.P.A.T. AFL-CIO v. Loc. 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 398 (2d Cir. 1989) ("Not one of the [individual] contemnors, other than Local 530, received the notice to which they were entitled under Rule 43(a). In the absence thereof, an order of contempt against them as non-parties to the proceedings was inappropriate."); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987) (vacating contempt orders against two officers and one office manager of a company where the order to show cause named only the company on the basis that they "were entitled to notice that they were defendants in a contempt proceeding and adequate time to prepare a defense"); *Phelps v. Super. Ct. for Maricopa Cnty.*, 424 P.2d 209, 210–11 (Ariz. Ct. App. 1967) ("The petitioner, who appeared only as a representative of the defendant, was not given any notice as an individual relative to the contempt proceedings. Before he could be found in contempt, it was necessary that the petitioner be notified that the charges were also against him as an individual."); *Brandyco Enters., Inc. v. State*, 1986 WL 2841, at *2 (Del. Super. Ct. Feb. 24, 1986) (unpublished) (reversing a

contempt order where individual was not given notice or an opportunity to be heard because the "rule to show cause was issued to the corporation"); *State ex rel. Dilly v. Hall*, 902 S.E.2d 487, 499 (W. Va. 2024) (holding that contempt orders were void where individuals were not notified in show cause order "that they personally were being charged with criminal contempt"); *cf. Elec. Workers Pension Tr. Fund of Loc. Union No. 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378–81 (6th Cir. 2003) (holding that corporate officer could be held in contempt for violation of injunction against company in a case where the petition for contempt was filed against both). The district court was therefore without authority to hold them individually in contempt, and we sustain the writ as to both Troy and Alexander.

**E. Eagle Rise Was Not Given a Reasonable Time to Show Cause.** That leaves the court's finding that Eagle Rise was in contempt of its August 2022 municipal infractions order. Troy appeared at the contempt proceeding and represented Eagle Rise. But before defending the merits, he challenged the City's service of the show cause order as improper.

The City made ten unsuccessful attempts at personal service on Eagle Rise. The City's process servers provided numerous detailed affidavits that explained why it could not effect personal service. The City proved that the petitioners were evading service; the magistrate specifically found that they did so intentionally. That finding allowed the court to order an alternative method of service through publication. Iowa R. Civ. P. 1.305(14) ("If service cannot be made by any of the methods provided by this rule, any defendant may be served as provided by court order, consistent with due process of law."); *cf. Beauchamp*, 328 N.W.2d at 528 (holding that where the contempt applicant alleged only that "she was unable to locate [the opposing party] 'directly' " but did not explain why

a process server could not locate him, the court's order allowing her to serve him by mail to his attorney was not proper service).

The City concedes that it failed to comply with the rules for serving by publication when it did not send a copy of the show cause order to Eagle Rise's last-known mailing address. *See* Iowa R. Civ. P. 1.311(1) ("In every case where service of original notice is made upon a known defendant, respondent, or other party by publication, copy of the notice shall also be sent by ordinary mail addressed to such party at the party's last-known mailing address . . . ."); *cf. Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 318–20 (1950) (holding that using service by publication for a known person but failing to mail a copy of the notice to the known person's address "is incompatible with the requirements of the Fourteenth Amendment"). The City nonetheless argues that Eagle Rise waived that defect in service when Troy appeared at the hearing on its behalf and defended it through his participation.

Regardless of whether Eagle Rise waived notice of the contempt proceeding by appearing at the hearing, section 665.7 requires that the contemnor be given "a reasonable time" to respond. Iowa Code § 665.7. This statutory requirement is consistent with due-process requirements that the offender receive "a reasonable opportunity to meet" the contempt charges "by way of defense or explanation," which includes "the right to be represented by counsel." *Knox*, 185 N.W.2d at 708 (quoting *In re Oliver*, 333 U.S. at 275); *accord Spitz*, 881 N.W.2d at 465; *McNabb*, 315 N.W.2d at 11–12; *cf. Lucas*, 23 N.W.3d at 28–29 (explaining the due-process requirements for service generally).

Eagle Rise was deprived of that opportunity when it received only one day's notice before the contempt proceeding. The City concedes that its attempt at service by mail did not comply with our rules, *see* Iowa R. Civ. P. 1.311(1), and

the only evidence in the record is that Troy did not learn about the contempt hearing scheduled for 10:30 a.m. on July 11 until sometime the prior day. Eagle Rise was unable to obtain counsel in that short time span. After the court denied Troy's request for a continuance, Troy repeatedly raised the lack of counsel during the hearing with respect to how much information he could divulge about the confidential settlement over the insurance proceeds, which formed the basis for the City's argument that Eagle Rise willfully disregarded the court's original order to replace the roof. The district court failed to give Eagle Rise "a reasonable time" to prepare a defense to the show cause order. Iowa Code § 665.7; *see, e.g.*, *Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 570, 577 (Conn. 2009) (holding that notice did not comply with due process where the "defendant was given less than one day to consider a motion for contempt" and "the defendant's attorney was in the midst of preparing for a previously scheduled hearing before the court"); *Goral v. State*, 553 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1989) (per curiam) (holding that there was a "due process error" when "the defendant received only two actual working days notice of the contempt hearing and was therefore not afforded a reasonable time for preparation of his defense"); *Hedquist v. Hedquist*, 563 S.E.2d 854, 856 (Ga. 2002) (holding that notice did not comply with due process where the trial court "decid[ed] contempt charges filed as late as the day of the hearing"). We therefore also sustain the writ as to Eagle Rise.

**III. Conclusion.**

We sustain the writ of certiorari as to all three petitioners.

**Decision of Court of Appeals Vacated; Writ Sustained.**