# IN THE SUPREME COURT OF IOWA

No. 14–1808

Filed June 24, 2016

**ERIKA L. SPITZ** f/k/a **ERIKA L. GENTZ,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR MITCHELL COUNTY,**

Defendant.

On review from the Iowa Court of Appeals.

Certiorari to the Iowa District Court for Mitchell County, Christopher C. Foy, Judge.

An ex-spouse seeks further review of a decision of the court of appeals upholding a district court ruling that she did not purge a contempt based on her failure to comply with the visitation provisions of the dissolution decree and ordering her to serve the previously imposed thirty-day jail sentence. **WRIT ANNULLED.**

Jaclyn M. Zimmerman of Harrison & Dietz-Kilen, P.L.C., Des Moines, for plaintiff.

Scott A. Michels (until withdrawal) of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for defendant.

Bradley A. Gentz, pro se.

**ZAGER, Justice.**

This case presents several questions of Fourteenth Amendment due process in the context of civil contempt. After two former spouses were both found in contempt for willfully violating provisions of the dissolution decree, they were given an opportunity to avoid jail by purging their respective contempts. Each claimed the other did not meet the conditions for purging contempt so a subsequent hearing was held. The ex-spouses appeared pro se, and the district court limited the time for the hearing. At the conclusion of the hearing, the district court found that neither spouse had purged their contempt and ordered each to serve time in jail.

The ex-spouse who had been found in contempt for denying visitation with the children to the other ex-spouse sought a writ of certiorari. She argued the Fourteenth Amendment was violated (1) when she was allowed to proceed without counsel or a valid waiver of the right to counsel, (2) when the district court imposed a time limitation on the hearing, and (3) when the district court did not allow the children to testify. The court of appeals rejected her arguments and annulled the writ.

On further review, we conclude she was not entitled to the right to counsel under the United States Constitution at the hearing to determine whether she had purged her civil contempt. We also conclude, under the specific facts and circumstances of this case, neither the time limitation nor the refusal to allow the children to testify resulted in a denial of due process.

## I. Background Facts and Proceedings.

Erika Spitz (formerly Erika Gentz) and Bradley Gentz were divorced pursuant to a stipulation and decree of dissolution of marriage entered

on November 21, 2011. Erika and Bradley are the parents of three children. At the time of their divorce, all three children were minors. The stipulation, incorporated by the district court into its decree, provided for joint legal custody of the children with primary physical custody awarded to Erika. Specific visitation rights were provided to Bradley. The stipulation also provided for child support payable by Bradley and for an allocation between the parties for the costs of uncovered medical expenses for the children. Both parties were represented by counsel during the initial divorce proceedings.

Unfortunately, the decree of dissolution was not the end of these parties' involvement with the court system. On March 27, 2013, Bradley filed a pro se application to have Erika held in contempt for denying visitation. On April 18, Erika, who was still represented by counsel, filed an application of her own to have Bradley held in contempt for failing to pay his share of medical bills. A hearing on both applications was held on May 14, at which Erika appeared with her counsel and Bradley appeared pro se. The hearing was not completed due to other matters on the court's calendar. However, based on the parties' agreement, the district court did order "counseling for the purposes of building the relationship between [Bradley] and their three daughters, and facilitating visitation between [Bradley] and the girls." The hearing was completed on August 12. Again, Erika was represented by counsel and Bradley appeared pro se. The district court did not rule immediately.

On August 20, Bradley filed another pro se application for contempt, alleging that Erika was willfully refusing to cooperate in scheduling appointments with the counselor appointed by the district court.

On September 25, the district court issued a detailed ruling based on the evidence it had received on May 14 and August 12. Among other things, the district court found the following:

> Although Bradley has made several attempts to pick up the girls from her home for purposes of visitation, Erika has not required or even encouraged any of them to go on a single visit with their father. In fact, Erika routinely calls the police to remove Bradley from her property when he does show up to get their daughters. Erika acknowledges that Bradley has not had regular visitation with any of their daughters since March 2012. Erika knows that Bradley is entitled to regular visitation with the girls under the Decree. However, Erika claims that the girls are afraid of Bradley and do not want to have visitation, so she has not required them to go with their father.
>
> While it appears that [two of the girls] now may feel uncomfortable in the presence of Bradley, there is absolutely nothing in the record to suggest these feelings are justified. Erika offered no evidence to show that Bradley presents any threat or risk of harm to any of their daughters. She admitted that Bradley has never hit or physically abused her or any of the girls.
>
> Erika did not describe a single event or situation that would explain why the girls supposedly do not feel safe or comfortable around Bradley.

The district court went on to find that there was "no good reason for Erika to ignore and disobey the visitation provisions of the Decree" and that Erika's failure to allow visitation after March 2012 was "willful, intentional, and contrary to a known duty imposed on her under the Decree."

Turning to Bradley, the district court rejected his argument that he did not have an obligation to reimburse Erika for a share of orthodontia expenses for one of the daughters because Erika did not consult with him before the braces were installed. The district court found both Erika and Bradley in contempt.

The district court ordered Erika to serve twenty days in jail, but gave her an opportunity to purge the contempt by providing visitation in October and paying the counseling service's fees. In a similar vein, the district court ordered Bradley to serve five days in jail, but gave him the opportunity to purge the contempt by paying $2975.45 within thirty days. This represented his unpaid share of medical expenses for 2012 and 2013. The district court stated that it would assume both contempts had been purged unless otherwise notified.

On October 1, the district court held a further hearing—this time on Bradley's August 20 application. At this hearing, both parties appeared pro se. On October 15, the district court dismissed the August 20 application. The district court criticized both parties, suggesting that both of them appeared to be more interested in scoring points against each other than in the well-being of their daughters.

Between November 2013 and March 2014, Bradley had only three visits with the two minor children.[1] Bradley was denied visitation and the children expressed frustration with the visitation arrangement. Between November 2013 and March 2014, Erika and Bradley discussed whether they could agree to reduce Bradley's visitation with the children in exchange for reducing the amount of child support he paid each month. With the help of Erika's attorney, they drafted a potential agreement whereby Bradley would give up his parental rights in exchange for lowering his child support payments to $100 per child per month until age eighteen, and a one-time payment of $1500 for any and all future medical expenses. Because of ongoing disagreements between the parties and concerns whether the district court would enforce such

---

[1]The third child of the parties had reached the age of majority by this time.

an agreement, no modification occurred regarding parental rights or visitation. The original schedule for visitation contained in the November 2011 stipulation and decree remained in effect.

On March 16, 2014, Erika's counsel moved to withdraw. Counsel explained that there was currently no pending activity in the case but Bradley had requested that a formal withdrawal be entered. Erika's counsel added that he had written to her in January that he would no longer be involved in the case. A formal order of withdrawal was entered March 27.

On March 27, Bradley filed a pro se affidavit to start a new contempt proceeding against Erika. In his affidavit, Bradley alleged that Erika violated the September 2013 contempt order and she continued to violate the original visitation schedule. The next day, Erika responded by filing a pro se affidavit to start contempt proceedings against Bradley. Erika alleged that Bradley had failed to pay his portion of uncovered medical expenses for one of the children.

A hearing on the dueling contempt actions came before the district court on May 27. Neither party was represented by counsel at this hearing. On June 3, the district court issued its order finding both Erika and Bradley in contempt of court under Iowa Code section 598.23 (2013).[2] The district court found Erika in contempt for failing to provide visitation as required by the stipulation and decree and sentenced her to

---

[2]Iowa Code section 598.23 deals specifically with contempt proceedings in the context of dissolution of marriage. It provides,

> If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.

Iowa Code § 598.23 (2013).

thirty days in jail. Mittimus on the jail sentence was withheld to give Erika the opportunity to purge the contempt. In order to purge the contempt, Erika was required to follow a graduated visitation schedule ordered by the district court. Specifically, the district court ordered visitation for the months of June and July that would take place in the office of a social worker, counselor, or clergy member selected by Erika. Beginning August 1, visitation was to resume pursuant to the original stipulation and decree. The district court also ordered Erika to file a statement detailing the efforts she took to achieve the court-ordered visitation and purge the contempt, specifically noting the dates when visitation occurred. The district court also found Bradley in contempt for failing to pay $2019.45 in uncovered medical expenses. Bradley had sixty days to pay his share of the unreimbursed medical expenses in order to purge his contempt. Neither Erika nor Bradley appealed the district court order finding them in contempt.

Bradley had visitation with the children in June and July consistent with the district court's order. Each visitation was supervised by the children's pastor. In August, Bradley began exercising visitation with the children consistent with the stipulation and decree and consistent with the district court order.

On August 4, Erika filed an affidavit contending Bradley had failed to pay the $2019.45 within sixty days. On August 7, after Bradley's first regularly scheduled visitation with the children, Erika filed an emergency motion with the district court to modify visitation. In the motion, Erika alleged the two teenage children were fearful of Bradley and did not want to continue their visitation. Following the filing of this motion, the children attended their first weekend visitation with Bradley. However, when they returned home on August 10, the police chief was waiting at

Erika's home. The next time Bradley arrived at Erika's home to pick up the children for visitation, he was met by a department of human services (DHS) investigator and a police officer. They advised Bradley that Erika had filed a report with DHS alleging emotional abuse and that the children would not be going with him for visitation. Erika suggested that the children's counselor also may have reported Bradley to DHS for emotional abuse.

Between August 10 and September 2, DHS conducted its investigation into the allegations. During this time, the children did not attend any visitations with Bradley. In a report dated September 2, DHS concluded that the allegations of emotional abuse were not confirmed. After receipt of this report, Erika made no effort to reestablish visitation between Bradley and the children.

On August 25 and September 4, Bradley filed affidavits asserting that Erika had wrongfully denied him visitation. A combined hearing on these matters took place on September 16. The orders setting the combined hearing indicated that jail sanctions would be the subject of the hearing and that the hearing would be limited to one hour. Neither party objected that this time would be insufficient or sought additional time.

Both parties appeared pro se at the hearing on September 16. At the outset of the hearing, the district court identified the matters that would be considered. Among other things, the district court stated,

> The third matter that the Court will consider is the . . . affidavit that [Bradley] filed alleging that . . . [Erika] has failed to comply with the provisions of an order . . . that the Court entered on June 3, 2014 finding . . . [Erika] to be in contempt and then allowing [Erika] an opportunity to purge herself of the contempt. The affidavit that [Bradley] has filed alleges that [Erika] has not complied with the requirements

or the conditions that the Court had set out for her to . . . purge the contempt.

The district court then asked each party if he or she was prepared to proceed without counsel, knowing that the result of the hearing could be an order directing them to jail. Specifically, the district court inquired of Erika, "Well, Ms. Spitz, knowing that the result of this hearing could be an order directing you to go to jail, are you prepared to proceed today without an attorney or do you want time to, um, hire an attorney?" She answered, "I will proceed, Your Honor, because, um, due to the reputation of the case, it's been difficult to communicate with an attorney in regards to retaining one."

After both Erika and Bradley agreed to continue with the hearing without representation, the district court stated that it had "some familiarity with the case and the issues that . . . the two of you have struggled with."[3] It added that it was an hour behind schedule, and there was another matter still to be heard that afternoon. It stated that each party would have twenty-five minutes to present evidence, cross-examine parties or witnesses, and make arguments to the court. The district court explained that this would enable the hearing to be completed within an hour.

The hearing actually took one hour and twenty minutes. The district court first took up the issue of whether Bradley had purged himself of his contempt. The district court next turned to the emergency motion for modification and then to whether Erika had purged her contempt. At this point the district court informed Erika that she had "pretty much used her time" and informed Bradley that he had two or

---

[3]The district judge presiding over this hearing was the same judge who had conducted all the 2013 contempt hearings and who had entered the September 25 and October 15, 2013 contempt rulings.

three minutes of time left and could ask a few questions of Erika if he wished. Bradley's "cross-examination," probably not surprisingly for a hearing at which neither party was represented, was essentially a back-and-forth argument between the parties. At this point, the district court gave the parties an opportunity to offer additional exhibits.

Erika had brought the children with her to the courthouse so they could testify at the hearing. Prior to the hearing, Bradley had asked Erika not to bring the children because he did not want them to testify. During the hearing, Erika mentioned several times to the district court that it should hear the children's "truth" about their visitations with their father. The district court declined to let the children testify. However, it admitted into evidence a letter from each child detailing their feelings about their father and their visitations with him.

On October 9, the district court found that neither Erika nor Bradley had purged their respective contempt citations under Iowa Code section 598.23. With respect to Erika, the district court's order found,

> The evidence before the Court clearly shows that neither Erika nor Bradley has done what was required for purging his or her respective contempt. The Decree entitles Bradley to visitation with [the girls] every other weekend, but Erika has not provided Bradley visitation with the girls since August 10, 2014. It might be argued that Erika was justified in denying visitation for roughly three weeks while the Department of Human Services investigated a report of child abuse made against Bradley. The investigation was completed by September 2, 2014, and the report of abuse was not confirmed. Even after the investigation was done, Erika continued to deny Bradley any visitation. The refusal of Erika to provide Bradley visitation after September 2, 2014, is contrary to the Decree. Because Erika failed to purge her contempt, the Court concludes that the sanction originally fixed in the Contempt Order should be carried out.

The order contained an additional paragraph detailing Bradley's noncompliance. Erika was directed to serve the previously ordered thirty days in jail and Bradley was ordered to serve ten days in jail.

At this point, each party hired an attorney and filed a motion for reconsideration. When both motions for reconsideration were denied, Erika filed a petition for writ of certiorari, which we granted, along with a temporary stay.

Erika's opening brief argued (1) the district court denied her Sixth Amendment and Fourteenth Amendment rights by imposing a jail sentence following a proceeding at which she was not represented by counsel, (2) she did not waive her right to counsel, (3) she was also denied her Fourteenth Amendment rights by the district court's time limitations and limitations on the presentation of evidence, and (4) the evidence does not support the finding that she failed to purge her contempt.[4] Bradley did not file a brief in response. We transferred the case to the court of appeals. The court of appeals rendered a decision that annulled the writ. We granted Erika's application for further review.

## II. Standard of Review.

Generally, we review certiorari actions for correction of errors at law. *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 517 (Iowa 2011). However, when a certiorari action alleges a violation of a constitutional right, we have recognized an exception to this general rule. *Id.* When the violation of a constitutional right is alleged, our standard of review is de novo. *Id.* To the extent Erika raises constitutional issues, we review them de novo. Erika also raises nonconstitutional issues. To the extent she alleges the

---

[4]All constitutional arguments were raised only under the United States Constitution. We do not consider any claim under article I, section 10 of the Iowa Constitution.

finding of contempt or the finding she failed to purge the contempt is in error, our review is at law. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). We therefore examine "the jurisdiction of the district court and the legality of its actions." *Id.* (quoting *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998)). We find error when the district court's finding of facts are not supported by substantial evidence or when the court has not applied the law properly. *Id.*

### III. Analysis.

**A. Right to Counsel Under the Federal Constitution.** Erika first contends the September 16 purge hearing violated her constitutional rights under the Sixth and Fourteenth Amendments. The Sixth Amendment is clearly not at issue because this is not a criminal proceeding. *See, e.g.*, *McNabb v. Osmundson*, 315 N.W.2d 9, 11 (Iowa 1982) (holding "the protections that shelter [civil contemnors] are to be found in the due process clause of the fourteenth amendment"). We begin our discussion with how we have historically treated the right to counsel in civil contempt proceedings.

There are two types of contempt: civil and criminal. Many courts have recognized that civil contempt proceedings in which there is the possibility of imprisonment are quasi-criminal in nature and thus require certain due process rights. *See, e.g.*, *Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 708 (Iowa 1986). The distinction between civil and criminal contempt is based upon the purpose of the contempt proceeding, namely whether it is meant to punish or meant to coerce. *See* 1 Wayne R. LaFave, *Substantive Criminal Law* § 1.7(e), at 68 (2003).

Criminal contempt is punitive in nature. *Id.* These proceedings are intended to "preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders." *Id.* Civil

contempt, on the other hand, is remedial and coercive in nature. *Id.* The parties who have the chief interest in the outcome of civil contempt proceedings are individuals whose private rights or remedies are being protected by the proceedings. *Id.* Civil contempt proceedings are intended "to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled." *Id.* This is true even when the underlying punishment is imprisonment. "If the relief provided is a sentence of imprisonment, it is remedial if the 'defendant stands committed unless and until he performs the affirmative act required by the court's order . . . .' " *Id.* (quoting *Hicks ex. rel. Feiock v. Feiock,* 485 U.S. 624, 632, 108 S. Ct. 1423, 1429, 99 L. Ed. 2d 721, 731 (1988)).

Despite this distinction, certain civil contempt proceedings do require due process rights similar to those required in criminal proceedings. In the past, when we have addressed the question of the right to counsel in contempt proceedings, we have answered the question under the Due Process Clause of the Fourteenth Amendment, rather than the Sixth Amendment. *See McNabb*, 315 N.W.2d at 11. Utilizing the Due Process Clause, we have concluded that there are a number of safeguards afforded individuals in contempt proceedings—both civil and criminal.[5] In *Phillips,* we established that the Due Process Clause requires that contempt be proved beyond a reasonable doubt because of the quasi-criminal nature of the proceedings. *Phillips*, 380 N.W.2d at 707–09.

---

[5]In *State v. Mott,* we noted that we treat all contempt proceedings as quasi-criminal, including civil contempt cases. 731 N.W.2d 392, 394 (Iowa 2007).

In *McNabb*, we noted that there are a number of due process requirements applicable to indirect[6] contempt proceedings:

> Except for a narrowly limited category of contempts, due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*McNabb,* 315 N.W.2d at 12 (quoting *In re Oliver*, 333 U.S. 257, 275, 68 S. Ct. 499, 508–09, 92 L. Ed. 682, 695 (1948)).  We have applied these due process rights in civil contempt cases since the early 1980s.  *See, e.g., Van Meter v. Hellwege*, 356 N.W.2d 541, 543 (Iowa 1984) (noting that the denial of counsel in the civil contempt proceeding was a denial of due process).

In *McNabb*, we concluded that the Due Process Clause of the Fourteenth Amendment requires the right to counsel in both civil and criminal contempt proceedings.  315 N.W. 2d at 11.  We also recognized there is a distinction between whether the right to counsel exists and under what circumstances it is required that an attorney must be appointed for an indigent defendant.  *Id.* at 12 ("Of course, it is plain that the right to be represented by counsel does not answer the question when and in what circumstances the due process clause requires that an attorney be appointed for an indigent.").  In *McNabb*, we separated the analysis for whether an individual is entitled to the right to counsel in a contempt proceeding and whether an individual is entitled to a state-

---

[6]An indirect contempt is an act that was committed outside the court's presence while a direct contempt is one that occurs in the presence of the court.  *McNabb*, 315 N.W.2d at 11.

appointed attorney.  *Id.*  We also noted that "the opinions of the United States Supreme Court [have not] laid out a clear path to the answer."  *Id.*

Five years ago, the Supreme Court attempted to answer this question.  *See Turner v. Rogers*, 564 U.S. 431, 441, 131 S. Ct. 2507, 2515–16, 180 L. Ed. 2d 452, 461 (2011).  "The interest in securing . . . the freedom 'from bodily restraint,' lies 'at the core of the liberty protected by the Due Process Clause.' "  *Id.* at 445, 131 S. Ct. at 2518, 180 L. Ed. 2d at 464 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785, 118 L. Ed 2d 437, 448 (1992)).  "And we have made clear that its threatened loss through legal proceedings demands 'due process protection.' "  *Id.* (quoting *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 1809, 60 L. Ed. 2d 323, 331 (1979)).[7]

*Turner* involved a contempt proceeding brought by the mother of a child, Rogers, against the father of a child, Turner, for failure to pay child support.  *Id.* at 436–37, 131 S. Ct. at 2513, 180 L. Ed. 2d at 458–59. Neither side was represented by counsel.  *Id.* at 437, 131 S. Ct. at 2513, 180 L. Ed. 2d at 459.  At the abbreviated contempt hearing, Turner, who had a history of substance abuse and was on disability, was only asked by the judge if there was anything he wanted to say.  *Id.*  He gave a brief statement saying he was sorry and asking for a chance.  *Id.*  Rogers was then given an opportunity to speak.  The court sentenced Turner to a year in jail without any finding on his ability to pay.  *Id.*

On appeal, the issue before the Supreme Court was "whether the Due Process Clause grants an indigent defendant . . . a right to state-appointed counsel at a civil contempt proceeding, which may lead to

---

[7]*Turner* also made clear that there is no right to counsel under the Sixth Amendment in a civil contempt proceeding.  564 U.S. at 441–42, 131 S. Ct. at 2516, 180 L. Ed. 2d at 461–62.

incarceration." *Id.* at 441, 131 S. Ct. at 2515–16, 180 L. Ed. 2d at 461. The Court held that the Due Process Clause does not require the provision of counsel in a civil contempt proceeding filed by an indigent private party so long as adequate procedural safeguards are present. *Id.* at 446–48, 131 S. Ct. at 2518–20, 180 L. Ed. 2d at 463–66.

In the context of a hearing for the nonpayment of child support, *Turner* held that the relevant procedural safeguards were "adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings." *Id.* at 448, 131 S. Ct. at 2520, 180 L. Ed. 2d at 466. The Court found that Turner's incarceration violated the Due Process Clause because Turner was *not* notified that the issue at his hearing would be his ability to pay, he was not given a fair opportunity to present financial information, and there was no court finding that he was even able to pay child support. *Id.* at 449, 131 S. Ct. at 2520, 180 L. Ed. 2d at 466–67.

Thus, *Turner* requires us to consider whether adequate procedural safeguards were present in assessing Erika's right to counsel under the Due Process Clause. First, as to *notice,* the foregoing background discussion makes it very clear that Erika was on notice of the central issue in the case—whether she had provided visitation to Bradley. Second, as to *opportunity to present and dispute relevant information,* Erika offered both her own testimony and letters from each of the minor children. She was able to present an uninterrupted explanation of why visitation did not occur between Bradley and the children. Third, as detailed above, there were specific *court findings* made by the district court in its order. We hold that all of the procedural safeguards required under *Turner* were met here.

Again, the hearing in this case was vastly different from the hearing described in *Turner* where the respondent had no notice of the issue that was being decided (i.e., his ability to pay), he had no opportunity to present or dispute evidence on the issue, and there were no court findings specific to the issue. *Id.* Erika received all of those procedural safeguards here. Accordingly, under the circumstances presented, Erika's due process right to counsel under the United States Constitution was not violated at the hearing to determine whether she had purged her contempt.[8]

**B. Other Issues Argued on Appeal.** In addition to the right to counsel argument, Erika raises other issues on appeal. We address each issue in turn.

1. *Due process violation due to time limitations.* Erika argues that her right under the Due Process Clause of the Fourteenth Amendment to introduce evidence and to offer testimony in her defense was violated because of the time limitations imposed by the district court during the hearing. Specifically, Erika objected to the significant time limitations put on her by the district court and her inability to call the children in her defense.

"Due process mandates that persons who are required to settle disputes through the judicial process 'must be given a meaningful opportunity to be heard.' " *In re Marriage of Seyler*, 559 N.W.2d 7, 9 (Iowa 1997) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 785, 28 L. Ed. 2d 113, 118 (1971)). "This opportunity to be heard must be 'granted at a meaningful time and in a meaningful manner.' "

---

[8]Since we conclude Erika was not entitled to the right to counsel at the purge hearing, we need not address the issue of waiver of the right to counsel.

*Id.* (quoting *Boddie*, 401 U.S. at 378, 91 S. Ct. at 786, 28 L. Ed. 2d at 119). However, the hearing that is guaranteed by the Due Process Clause varies depending on what is "appropriate to the nature of the case." *Id.* (quoting *United States v. Raddatz*, 447 U.S. 667, 677, 100 S. Ct. 2406, 2413, 65 L. Ed. 2d 424, 434 (1980)). When a district court determines what type of hearing is required by due process, it must consider

> (a) the private interests implicated; (b) the risk of an erroneous determination by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs that the additional procedures would involve.

*Id.* (quoting *Raddatz*, 447 U.S. at 677, 100 S. Ct. at 2413, 65 L. Ed. 2d at 434).

We recognize that the "trial court has considerable discretion in directing the course of the trial." *Glenn v. Carlstrom*, 556 N.W.2d 800, 804 (Iowa 1996). While a district court has the inherent authority to manage its docket and calendar, the court's power to manage the cases in its docket "while economizing on time and effort must be consistent with the Constitution and statutes. A court's discretion in setting its calendar and managing cases is limited by due process . . . ." 88 C.J.S. *Trial* § 80, at 70–71 (2012). Perhaps most importantly, "[c]rowded dockets and administrative efficiency cannot deprive litigants of their day in court." *Id.* § 80, at 71. While time limits serve a purpose, when they are applied arbitrarily and inflexibly to a case with no consideration for the particular facts and circumstances of the litigants, those time limits can pose a threat to due process. *In re Marriage of Ilhe*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998). "Thus, judges must not sacrifice their primary goal of justice by rigidly adhering to time limits in the name of efficiency."

*In re Marriage of Ilhe*, 577 N.W.2d at 68. While district courts have discretion to set time limits on hearings, this discretion is not limitless and cannot deprive citizens of their rights.

Under the circumstances of the case, we do not find that the time limitations denied Erika due process under the Fourteenth Amendment. The parties were informed of the overall one-hour time limit well in advance and did not seek relief from it. The district judge who heard the matter had a prior familiarity with these parties and their disputes, having presided over contempt hearings on three separate occasions in 2013 and having issued two detailed rulings.[9] Both parties here were proceeding pro se. Given the contentious relationship between the parties, that made the district court's job difficult. The district court allowed twenty minutes more than had been originally set aside for the hearing. Both parties testified for approximately the same amount of time. The district court did its best to steer the parties toward the relevant issues.

Having said all this, we nonetheless take this opportunity to voice a reminder that arbitrary time limitations should not be placed on hearings and trials. It is incumbent upon all participants in our court proceedings to ensure that the due process rights of all litigants are respected by allowing sufficient time for the presentment of evidence, testimony of witnesses, and argument.

2. *Due process violation due to limits on the presentation of evidence.* Relatedly, Erika argues that the district court violated the Due Process Clause of the Fourteenth Amendment in not allowing her to

---

[9]In fact, when the initial contempt hearing on May 14, 2013, could not be completed in the time originally allocated, this same district judge allowed it to be resumed on August 12.

present testimony from the minor children, who were fifteen and fourteen at the time of the purge hearing. We disagree. This was not an initial determination of custody, and the district court did receive a letter from each girl as well as the DHS report that included detailed discussions of DHS's interviews with the girls.

3. *Sufficiency of the evidence.* Last, Erika maintains there is insufficient evidence that she failed to purge her contempt. We believe Erika's briefing (prepared by her appellate counsel) misunderstands the nature of her burden. At the *purge* stage, the contemnor must show "either that the prescribed conditions had been fulfilled or that he [or she] had made a bona fide effort . . . but through no fault of his [or her] own was unable to comply with the conditional orders." *Greene v. Dist. Ct.*, 342 N.W.2d 818, 821 (Iowa 1983). There is no dispute that no visitation occurred after August 10. The record contains considerable evidence that Erika did not believe visitation was good for her daughters, some evidence that she tried to thwart visitation, and no evidence that she did anything specific to facilitate visitation after August 10. We affirm the district court on this point.

## IV. Conclusion.

For the foregoing reasons, we affirm the decision of the court of appeals and annul the writ.

**WRIT ANNULLED.**