# IN THE COURT OF APPEALS OF IOWA

No. 19-1419
Filed June 3, 2020

**SPENCER ALLEN BRINK,**
      Plaintiff-Appellee,

**vs.**

**CARICIA LANISE ANDREWS,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Johnson County, Mitchell E. Turner,

Judge.

      Caricia Andrews appeals the district court's entry of a default decree

modifying physical care of the parties' child.  **AFFIRMED.**

      Nathan Legue of Legue Law, P.C., Davenport, for appellant.

      Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.

      Considered by Vaitheswaran, P.J., Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

This appeal arises from a discovery dispute in a custody modification action. The dispute led to the filing of applications for default and for a finding of contempt. The district court granted the default application but declined to find contempt. On appeal, the parent who failed to comply with discovery requests argues the procedures followed by the court violated her constitutional rights and the district court should not have modified the physical care arrangement.

## I. *Background Proceedings*

Spencer Brink and Caricia Andrews, the parents of a child born in 2009, reached a mediated agreement in Illinois under which Andrews would exercise physical care, subject to visitation with Brink. Although the agreement was not incorporated into a decree, both parents operated under the assumption that it was a final judgment.

Several years later, Brink applied to register the agreement with the Iowa district court. He simultaneously filed an Iowa "petition for judicial determination of custody, care, visitation and support" or, in the alternative, a "petition to modify custody, care, visitation and child support." For jurisdictional purposes, he alleged the parents and child had lived in Iowa for more than a year. *See* Iowa Code § 598B.201 (2017) (specifying conditions under which Iowa has jurisdiction to make an initial child custody determination).

Andrews briefly had counsel, who was allowed to withdraw. Brink served discovery requests on Andrews that remained unanswered. He followed up with motions to compel. At a hearing on the motions, Andrews acknowledged she "didn't turn [the discovery] in," but stated, "I'm actually just trying to get money

together to get an attorney." The district court granted the motions and ordered Andrews to file responses by a date certain.

Andrews provided some but not all the information Brink requested. Approximately ten weeks after the deadline for responding expired, Brink filed an application for rule to show cause why Andrews should not be held in contempt. He also filed an application for a default. The district court scheduled the "contempt matter" for hearing. The scheduling order contained the following admonition:

> [Andrews] is advised this contempt matter carries the possibility of punishments, including incarceration. You have the right to be represented by an attorney in this matter. If you do not have an attorney and cannot afford one, you may file an application for court-appointed counsel with the Johnson County Clerk of Court no later than seven (7) days prior to the date set for the hearing. If you qualify for court-appointed counsel, an attorney will be appointed to represent you in this matter. However, you may be required to reimburse the State for all or part of the cost of your court-appointed attorney.

The court "allotted one hour" for the hearing but afforded the parties the right to file a written application seeking additional time. The court separately scheduled a hearing on Brink's request for entry of a default.

On the date of the contempt hearing, Andrews asked for a three-day postponement. Brinks did not resist the request, and the district court consolidated the contempt hearing with the default hearing scheduled for later that week.

Andrews appeared at the consolidated hearing without counsel. She advised the court that she had "an appointment with an attorney" and she just wanted "to be able to meet with [her] attorney and have him go through this stuff and come back with him." She acknowledged not asking for an attorney when she requested the three-day postponement.

The district court denied Andrews' request for another postponement. The court cited the scheduling order filed seven weeks earlier advising her of her right to apply for court-appointed counsel "no later than seven days prior to the date set for hearing." Following brief testimony about the discovery dispute, the district court filed an order finding that "[t]he discovery requests" remained "outstanding" despite the passage of several months; "[t]he information sought [was] relevant and material to [Brink]'s case"; and trial was imminent. The court further found Andrews in default and scheduled a hearing "to address the relief requested by" Brink. The court set aside "[o]ne hour" for the hearing. After the relief hearing, the court filed a default decree concluding Brink established a substantial change of circumstances warranting modification of the physical care arrangement. Andrews appealed.

## II. *Constitutional Challenges to Contempt / Default Procedures*

Andrews contends the district court violated her constitutional rights by (1) "den[ying] her oral request to continue the contempt hearing to obtain counsel," (2) "violat[ing] her right not to incriminate herself," and (3) "not giv[ing her] sufficient time to respond or present evidence at the hearing." Brink responds that Andrews failed to preserve error on any of these issues. We agree.

Andrews informed the court five months before the combined default/contempt hearing that she intended to hire an attorney to help her respond to the outstanding discovery. The response deadline came and went, as did the deadline to seek court-appointed counsel for the contempt hearing. Andrews' day-of-hearing request for a postponement to obtain counsel was not only untimely but failed to incorporate any of the arguments she now propounds. And, even after

the court ruled, Andrews did not file or have an attorney file "a motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2)" to "place[ ] her complaints before the district court for consideration prior to filing her notice of appeal." *See Conrad v. Conrad*, No. 18-1714, 2019 WL 4678180, at *3 (Iowa Ct. App. Oct. 9, 2019); *see generally Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 464–68 (Iowa 2016) (summarizing right to counsel in civil contempt proceedings under the federal Constitution and due process violations due to time limitations). Because the issues were neither raised nor decided, we decline to address the merits. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before [the court] will decide them on appeal."); *Gibb v. Hansen*, 286 N.W.2d 180, 185 (Iowa 1979) (declining to consider constitutional attacks on contempt statute because "none of these questions . . . were ever presented to the district court"); *Jensen v. Baccam*, No. 18-1848, 2020 WL 2060296, at *4 (Iowa Ct. App. Apr. 29, 2020) (concluding a party to a contempt proceeding failed to preserve error on his argument that his constitutional due process rights were violated).

## III. *Default Modification Decree*

Andrews also argues we should review the merits of the default decree and conclude that Brink failed to establish a substantial change of circumstances or superior caretaking ability to justify modification of the decree. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) (setting forth modification standard). She is correct that in a case involving child custody, the district court is obligated to consider the evidence notwithstanding a finding that a party is entitled

to a default. *See Fenton v. Webb*, 705 N.W.2d 323, 327 (Iowa Ct. App. 2005); *In re Marriage of Gosenberg*, No. 05-1944, 2006 WL 1279279, at *3 (Iowa Ct. App. May 10, 2006). The district court did that. Following the evidentiary "relief" hearing, the court found a substantial change in circumstances based on:

> [Andrews]'s frequent relocations and inability to maintain a stable residence; [Brink]'s stable residence and employment in Coralville; [Andrews]'s historical work hours and need to have the child cared for by third parties; [Andrews]'s failure to fully support the relationship between the minor child and [Brink]; and [Andrews]'s inability to consistently communicate with [Brink] in a civil fashion.

The court also determined Brink "met his burden to show he can provide superior care so as to justify a physical care modification":

> [Brink]'s evidence demonstrates that he has repeatedly put the child's interests first. Even though [Brink] lives approximately an hour away from the minor child's school, he was involved with his son's classes and maintained communication with the child's teachers. He has provided a stable and nurturing home environment for his son, and would have been able to spend much more time with his son if not for [Andrews]'s refusal to allow the additional contact. [Brink]'s testimony and exhibits provided ample evidence of the strong bond that he has with his son, and his proposed visitation schedule for [Andrews] evidences his interest in providing substantial continuing contact between [Andrews] and the child. Further, because of [Brink]'s stability, the minor child has friends in the Coralville area, helping with the transition to the child's attendance in the Iowa City Community School District.

No useful purpose would be served by detailing the parents' testimony. Suffice it to say that, on our de novo review, we discern ample support for the district court's findings. We conclude modification of the Illinois agreement to afford Brink physical care of the child was in the child's best interests.

**AFFIRMED.**