# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0101
Filed April 1, 2026

————————————

**Antwon Julius Flowers,**
Plaintiff,

v.

**Iowa District Court for Black Hawk County,**
Defendant.

————————————

Certiorari from the Iowa District Court for Black Hawk County,
The Honorable Linda M. Fangman, Judge.

————————————

**WRIT SUSTAINED**

————————————

Nichole Watt (argued) and Kimberly DePalma of the State Public
Defender's Office, Waterloo, attorneys for plaintiff.

Brenna Bird, Attorney General, and Martha E. Trout (argued), Assistant
Attorney General, attorneys for defendant.

————————————

Heard at oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

Antwon Flowers challenges the district court's order finding him in contempt for failing to follow the court's directive to file an amended financial affidavit. Flowers claims the court's order violated his right against self-incrimination; the court violated his right to counsel, imposed an illegal sentence, and was without authority to make the order; his "alleged conduct" was not contemptible; and he did not willfully disregard the court's order. Because the court's order compelling Flowers' production of an amended affidavit violated his right against self-incrimination under these circumstances, it was erroneous for the court to rely on Flowers' failure to do so to hold him in contempt. We sustain the writ and vacate the contempt order imposed by the court.

## BACKGROUND FACTS AND PROCEEDINGS

A special agent from the Department of Criminal Investigation (DCI) reviewed records from Isle of Capri Casino in Waterloo and determined Antwon Flowers used a false social security number to claim numerous jackpots over a period of several years. In October 2023, the State filed a complaint against Flowers alleging identity theft. The State later filed a trial information charging Flowers with one count of identity theft over $10,000, a class "C" felony, in violation of Iowa Code section 715A.8(3)(a) (Supp. 2019).

In January 2024, Flowers filed an application for appointment of counsel at State expense and affidavit of financial condition in support of the application. Flowers stated he had "No Job" and he had made no income "in the last 12 months from any source, before taxes and deductions." The district court found Flowers eligible for court-appointed counsel and

2

appointed attorney Nichole Watt from the Waterloo Public Defender's Office to represent him.

The case proceeded to a jury trial in January 2025. During trial, the State called casino employees and the investigating DCI agent, who testified about Flowers' casino winnings. Evidence presented showed that in 2023, Flowers "won a bunch of jackpots" at the Isle of Capri Casino under a social security number that didn't match his name.[1]

Near the end of the State's case, outside the presence of the jury, the following colloquy took place:

> COURT: All right. The only thing I was going to bring up. Obviously I've had a chance to be looking at the court file and, [defense counsel], I think you need to talk to Mr. Flowers about filing a new financial affidavit, because obviously in 2023 he claimed he had no source of any money and obviously I've just heard repeatedly about jackpot winnings.
>
> DEFENSE COUNSEL: We don't know what he lost.
>
> COURT: That is not the question on the financial and it doesn't ask about taxes. And frankly, since he claims he has no job, I don't know that you're entitled to write off expenses if you claim no job. If you want to bring in his taxes as an exhibit, I'll be happy to look at it. But on the form the question was did you receive any money from any other source and he said no.
>
> DEFENSE COUNSEL: Okay.

___

[1] Although not relevant to the issues raised on appeal, we note that the DCI agent also testified about an incident report he wrote regarding Flowers' jackpots, in which he reported that "there's a procedure error involving . . . jackpot[s] and the verifications not being done." In response to the DCI agent's concern about the lack of cross-check on social security numbers, the Iowa Racing and Gaming Commission stated "they were in between systems to verify jackpots." The DCI agent opined that a "[l]ot of this could have been prevented for Mr. Flowers if that verification would have been done [in] 2019 on the jackpot winnings."

COURT: So and obviously that's penalty of perjury. So I'm going to give him that opportunity to correct those statements.

The State rested, and defense counsel moved for judgment of acquittal, which the court denied. Another conversation about Flowers' financial affidavit then took place:

DEFENSE COUNSEL: Yes. I just wanted to before Mr. Flowers takes the stand and before that final decision is made. It's my understanding that the State doesn't have any criminal impeachables that they would be using.

I also in light of the Court's discussion regarding Mr. Flowers' financial affidavit, previously I think it was on the record about whether he did or didn't properly claim his income. I guess what I want is I would object to any questions being asked about that as irrelevant to the facts of this case, but I'd kind of like a ruling ahead of time on whether the State's going to be able to ask about that, about his financial affidavit.

COURT: It was not raised as an effort to think that that's admissible, no.

DEFENSE COUNSEL: Okay.

COURT: I just wanted it to accurately reflect it just for purposes later on that—down the road if it becomes.

DEFENSE COUNSEL: Okay.

COURT: I don't think it—as long as he corrects it, I don't think he can even raise it.

DEFENSE COUNSEL: Well, I'm not going to correct it before he testifies.

COURT: Well, no, that's fine. I'm saying before the case is over.

DEFENSE COUNSEL: Okay. All right. That's all I wanted to make sure of.

COURT: Okay. Yeah, I wasn't thinking that that was going to be something that was subject to cross-examination—

4

DEFENSE COUNSEL: Okay.

COURT: —because I don't really know if that's relevant and frankly I guess it depends what it would be that he would say that would make it relevant.

DEFENSE COUNSEL: Okay.

COURT: Yes. So if for some reason somebody thinks that's relevant, I think we probably need to approach and make a different record.

DEFENSE COUNSEL: Okay.

STATE: Yeah, State wasn't intending to use that, Your Honor.

COURT: Okay.

Flowers then testified, stating he did not purposely provide the wrong social security number; "It was a mistake." After the jury was adjourned for the day, the following colloquy took place:

COURT: Just revisiting again. Now we've had Mr. Flowers testify that he looked at his phone for the job that he had in October of 2023, which of course also was not disclosed on his financial. So let's make sure we get an updated financial correctly done today.

DEFENSE COUNSEL: All I can tell the Court is that on the day— in October 2023 on that day he might have had a job. He didn't fill out the financial affidavit that day. He didn't have a job when he filled out the financial affidavit.

COURT: Right. How much money have you made in the last twelve months from any source. If he had a job in October of 2023, when he filled out the application in January of 2024 he has obviously made money in the last year.

DEFENSE COUNSEL: All right. I'll have to further confer about what to do about the financial affidavit. I understand your position though. Thank you.

Trial resumed the following morning with the parties giving closing arguments and the court instructing the jury. As the jury commenced deliberations, the court revisited the financial affidavit:

COURT: Okay. The Court has one thing. On two separate occasions I have directed Mr. Flowers to complete a new financial affidavit. We are now at the end of the trial, and Mr. Flowers has still not complied with the directive of the Court.

Mr. Flowers, is there a reason why you haven't complied with the directive of the Court?

DEFENSE COUNSEL: Your Honor, I will speak for him.

COURT: I'm asking Mr. Flowers.

DEFENSE COUNSEL: I have advised Mr. Flowers—

COURT: It's contempt. Why have you not complied with the directives of the Court?

FLOWERS: I was never brought the information.

COURT: Pardon me?

FLOWERS: I was never brought the information.

COURT: What do you mean you were never brought the information? I directed you twice to fill out a new financial affidavit. Why have you not done it?

(Attorney-client conference.)

FLOWERS: She advised me not to.

COURT: [Defense counsel], in what manner do you think you can circumvent the Court's direct order?

DEFENSE COUNSEL: In this situation where the Court is throwing around words like "perjury," all I can see from forcing—compelling speech out of him and making him fill out a new financial affidavit does nothing [but] put him in dangerous territory. So I advised

6

him to plead the Fifth on it. And if we want to set it for hearing, then we will.

> COURT: No. That's what this is. And certainly you know that perjury can be corrected within the proceedings, and I gave him an opportunity now to correct it. But aside from that, I have given him an order on two separate occasions to do it. He has not done it. There is no good cause because, frankly, [defense counsel] does not have authority to tell you not to follow the Court's directive.
>
> And so therefore, you are in contempt and you are fined a thousand dollars. I will do an order. You need to get that paid immediately.

Thereafter, the jury returned a verdict finding Flowers not guilty. Flowers filed a petition for writ of certiorari and stay of the contempt sentence. *See Opat v. Ludeking*, 666 N.W.2d 597, 606 (Iowa 2003) ("Although there is no statutory right to appeal from a contempt order, the proceeding may, in a proper case, be reviewed by certiorari." (citation omitted)). The supreme court granted the petition and request for stay and transferred the case to this court.

## STANDARD OF REVIEW

We generally review certiorari actions for correction of errors at law. *Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 464 (Iowa 2016). "However, when a certiorari action alleges a violation of a constitutional right," "our standard of review is de novo." *Id.* "We will sustain a writ of certiorari when the district court has exceeded its jurisdiction or otherwise acted illegally." *Doe v. Iowa Dist. Ct.*, 27 N.W.3d 264, 266 (Iowa 2025).

## DISCUSSION

Flowers challenges the district court's order finding him in contempt for failing to follow the court's directive to file an amended financial affidavit. He raises the following claims:

I. The district court violated Flowers' right against self-incrimination under the Fifth Amendment of the United States Constitution and article I, section 9 of the Iowa Constitution by compelling him to "potentially incriminate himself."

II. The district court violated Flowers' right to counsel under the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution by "cut[ting] off Flowers' counsel and insist[ing] on speaking to him directly."

III. Flowers' alleged action (i.e., the statement that "he had made no money in the past year") "was not contemptible" because there was no evidence he "knew the statement was false" or that "the statement was false at all" and no judicial function was "obstructed by not filling out a new financial affidavit."

IV. The district court had no authority to initiate perjury charges or remove Flowers' court-appointed counsel, and therefore, the court did not have authority to order Flowers to fill out a new financial affidavit.

V. Flowers did not "willfully disregard" the court's order because he followed his counsel's advice to refuse to fill out a new financial affidavit.

VI. The district court imposed an illegal sentence because it issued "a purely punitive fine" in an amount that is "double the maximum allowed by law."

Only two of these claims are preserved for review: the right-against-self-incrimination claim and the illegal-sentence claim.[2]  Error was not

---

[2] The State acknowledges the illegal-sentence claim is properly before us. However, the State argues Flowers failed to preserve his claim relating to his right against self-incrimination because the district court did not rule on it. We observe that defense counsel questioned the court about the issue of "perjury" and the discussion turned to Flowers "pleading the Fifth." Ultimately, the court rejected counsel's reasoning and found Flowers in contempt. In this situation, we assume without deciding that error was adequately preserved on Flowers' claim. *See State v. Vowels*, No. 13-1223, 2014 WL 3511852, at *2 (Iowa Ct. App. July 16, 2014) ("We will examine any issues considered by the district court, even if that consideration was 'incomplete or sparse.'" (quoting *Lamasters v. State*, 821 N.W.2d 856, 865 (Iowa 2012))).

preserved on the remaining claims because they were neither raised before nor decided by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

It is well established that in certiorari actions, we will only review issues first presented to the district court. *Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 489 (Iowa 2003). Certiorari actions "are not an exception" to our normal error preservation requirements. *Huffer v. Iowa Dist. Ct.*, No. 23-0885, 2024 WL 4039430, at *1 (Iowa Ct. App. Sep. 4, 2024). And the "rules of error preservation apply with equal force to constitutional issues." *Beaver v. McAtee*, No. 15-1241, 2016 WL 1696927, at *3 (Iowa Ct. App. Apr. 27, 2016). The rules also apply to claims relating to the court's authority. *Meier*, 641 N.W.2d at 541 n.2. Accordingly, we do not address Flowers' unpreserved claims.

## I. Right Against Self-Incrimination

The Fifth Amendment of the U.S. Constitution and article 1, section 9 of the Iowa Constitution protect a criminal defendant from compulsory self-incrimination. *See* U.S. Const. amend V; Iowa Const. art. 1, § 9; *State v. Gibbs*, 941 N.W.2d 888, 894 (Iowa 2020). "However, that right only prohibits compelled testimonial evidence from a defendant." *State v. Dewbre*, 987 N.W.2d 861, 867 (Iowa Ct. App. 2022).

Here, Flowers argues the court compelled him "to respond about potential perjury charges" by requiring him to fill out a new financial affidavit. Specifically, Flowers claims

> [h]e was being asked to fill out a document that the Judge had implied would be used to determine whether or not there would be a perjury charge and potentially conviction. Acting as the State, the Judge was threatening

9

to inflict sanctions or penalties if he did not fill out that form, and chose not to remain silent.

We are not wholly persuaded by Flowers' characterization of the court's statements. Indeed, when the issue was first raised, the court pointed out that inaccurate statements in a financial affidavit have a "penalty of perjury," but the court continued, "So I'm going to give him that opportunity to correct those statements." The court later stated, "And certainly you know that perjury can be corrected within the proceedings, and I gave him an opportunity now to correct it" on "two separate occasions."

The court noted it "wasn't thinking that [the financial information] was going to be something that was subject to cross-examination," and the State maintained that it was not "intending to use" any information from the affidavit against Flowers. But here, based on those passive statements from the court and the State, Flowers had no guarantees that a newly prepared affidavit would not be used against him as the trial was proceeding, thus incriminating him at that particular time when he could not invoke his privilege.

We ultimately agree with Flowers' contention that under the very narrow circumstances of this case, where Flowers is asked to provide confirmation of his financial situation while on trial for a financial crime, the court's directives could be interpreted as questions compelling statements that could incriminate Flowers. *In re E.H. III*, 578 N.W.2d 243, 249 (Iowa 1998) (citation omitted) ("When the State 'compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment.'" (citation omitted)); *see also State v. Kennedy*, 846 N.W.2d 517, 524 (Iowa 2014) (noting affidavits are "testimonial statements"). While the

State said it would not use the information at trial, there were no stipulations to that effect. Specifically, the court stated, "I don't really know if [the updated information is] relevant and frankly I guess it depends what it would be that he would say that would make it relevant," and "I just wanted it to accurately reflect it just for purposes later on that—down the road if it becomes [relevant]." *See E.H. III*, 578 N.W.2d at 249 (noting that the privilege against self-incrimination "allows a person not to answer official questions . . . where the answers might incriminate him in future criminal proceedings" (cleaned up)); *see also State v. Washington*, 832 N.W.2d 650, 662 (Iowa 2013) (finding the sentencing court "improperly penalized" the defendant for invoking his right against self-incrimination by changing course on the defendant's punishment after he declined to answer the court's question whether he would produce a "clean or dirty" drug test).

In reaching this conclusion, we have considered the State's argument that Flowers was not compelled to update his statement but rather "he agreed to do so." The State further points out that the affidavit, signed by Flowers, contains a provision that requires it to be updated if there are any changes:

> I understand I may be required to repay the State for my attorney fees and costs, I may be required to sign a wage assignment, and I must report any changes in the information submitted on this financial affidavit. I promise under the penalty of perjury the statements I make in this application are true and I am unable to pay an attorney to represent me.

We have also considered the fact that a defendant must file a financial affidavit to support a request for court-appointed counsel. Iowa Code § 815.9(2) (2024) ("A determination of whether a person is entitled to an appointed attorney shall be made on the basis of an affidavit of financial status . . . ."); *see Williams v. State*, No. 21-1985, 2023 WL 4104018, at *6–7 (Iowa

Ct. App. June 21, 2023) (affirming the court's denial of appointed counsel where the defendant failed to abide by the supreme court's directives to file a financial affidavit to support his request); *State v. Thompson*, 253 N.W.2d 608, 610 (Iowa 1977) (holding a magistrate "correctly refused to appoint counsel to represent defendant at public expense" where there was "no satisfactory showing defendant was unable to employ counsel at his own expense").

But these considerations are neither relevant to the issue before us nor persuasive to our determination that in this situation,[3] the court's order compelling Flowers' production of an amended affidavit violated his right against self-incrimination. It follows that it was erroneous for the court to rely on Flowers' failure to file the affidavit to hold him in contempt. *See In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) ("The State may not penalize Douglas for noncompliance with a court order impinging on his right against self-incrimination."). We accordingly sustain the writ and vacate the contempt order imposed by the court.

## II. Illegal Sentence

Flowers claims his contempt sentence is illegal because "[t]he imposed fine of one thousand dollars is double the maximum allowed by law."[4] Indeed, unless otherwise provided, the punishment for contempt

---

[3] We have considered this case only on the record presented, and we don't foreclose the possibility that a court could direct a defendant to file an amended affidavit under different circumstances. *See generally Washington*, 832 N.W.2d at 656 (observing that Fifth Amendment claims must by analyzed "in the specific context" the right is invoked).

[4] Flowers further argues that because the court's contempt order did not give him an opportunity to purge the amount by filing a new financial affidavit, the sole purpose of the court's order was to punish him. *See In re Inspection of Titan Tire*, 637 N.W.2d 115, 133

before the district court "shall be . . . by a fine not exceeding five hundred dollars." Iowa Code § 665.4(2). The State concedes the amount of Flowers' fine exceeds the statutory limit. However, in light of our discussion above, we need not address Flowers' claim relating to the amount of the fine.

## CONCLUSION

We sustain the writ and vacate the contempt order imposed by the district court.

**WRIT SUSTAINED.**

---

(Iowa 2001) ("Typically, the district court provides the opportunity and conditions for a contemner to purge the contempt.").